## CHRISTIAN VS. GREENWOOD ET AL.

Though a sale of property be fraudulent on the part of the vendor, being made to defraud his creditors, the purchaser cannot be affected by the fraud unless he participated in it, with a knowledge of the fraudulent design, and with intent to further the accomplishment of such design.

One creditor has the same right to purchase, with his debt, the property of his debtor, that another creditor has to sell it under execution; and this, though he knows that the debtor's object in selling to him, is to deprive the other creditor of the means of making his debt—the effect is but preferring one creditor to another.

But, in such case, the creditor must allow a fair price for the property and not buy more than is necessary for his own protection—at least it would be a suspicious fact, if, unless there be shown good reasons for the property not to be sold separately, he includes several parcels of property when one would pay the debt, and pay the overplus in money.

A purchaser from a fraudulent vendor will be held to be a participator in the fraud; if he have notice of it, and still deal with him, and thereby afford him the means to make his fraudulent efforts against his creditors successful; and this, though he may have paid a full price for the property.

And so, where a purchaser of negroes knew that his vendor had run them off—had been told that the vendor had acknowledged that he had run them off to avoid the debts sought to be enforced against them—bought them after he knew they had been run off, and while they were absent, paying mostly in cash, he does not present such a case as entitles him to the protection of a court of equity but will be held responsible for the fraud of his vendor to the extent of his dealing with him, on the presumption of a fradulent intent on his part, as well as on the part of the vendor.

*Appeal from Ashley Circuit Court in Chancery.*

Hon. JOSIAH GOULD, Special Judge.

JOHNSTON, for appellant.

The complainant insists that he has established every material allegation in his bill, and has made manifest his legal and equitable right to the negroes, Ned and Fanny, from the facts proven that he bought them from C. J. Hundley, in Louisiana, about the 4th of February, 1856, for $1500, a fair price, which he paid Hundley; that he took them into possession and removed them to Arkansas, and held them in possession peaceably until the 6th of September, 1856; that the negroes were free from liens when he bought them, and that Hundley had an untrammeled right to sell them.

But the defendants object that complainant did not purchase the negroes in good faith, but that he bought them with the intent to hinder and delay them in the collection of their debts.

Upon what hypothesis this charge of fraud is predicated, it is difficult to discover from the facts disclosed in the bill, answers, and proof.

It is certainly clearly manifest from 'all the facts disclosed in the testimony, that complainant, in the purchase of the negroes, committed no act which necessarily imports fraud; and it is insisted that a fair and reasonable conclusion from the whole

case as disclosed by the pleadings and testimony *acquits* him from the *slightest suspicion* of fraud, as contemplated by the statute. It is submitted that the true construction of the 4th section of the statute of frauds is, " that the facts must show such an intent to commit a fraud that there can be no reasonable conclusion to the contrary."

This construction, it is submitted, is recognized and sustained by the ruling of the court in the case of *Dardenne vs. Hardwick*, 9 *Ark.*, 485, and 8 *Peters* 253. And the construction implies that both parties to the transaction *must* participate in the *fraudulent intent.* 9 *Ark.*, 485, 486, *Dardenne vs. Hardwick;* also 17 *Ark., Splawn vs. Martin,* 152, *and authorities cited.*

The testimony of Barnes and Hundley shows that Hundley was indebted to complainant at the time he purchased the negroes, and that complainant released to Hundley his indebtedness, in part payment of the negroes.

It will not be contended that there is any fraud·in that act. In the absence of any lien on his property, Hundley certainly had the right to sell it to Christian, especially so when he sold it to pay him a just debt, without being liable to the charge of ·fraud.

But defendants say that Hundley run his property from Arkansas to Louisiana to avoid the payment of debts he owed them, and complainant knowing that he had run them for that purpose, a short time afterwards, went to Louisiana and bought them. It cannot be contended that complainant is chargeable ·with fraud in this act of Hundley, because it is not charged, nor proved, nor attempted to be proved that complainant in any manner aided or assisted, or influenced Hundley to run his negroes.

Complainant submits that the defendants have failed to make out a case of fraudulent intent, as to the purchase of the negroes by him.

Complainant also submits that his purchase was made in good faith in the eyes of the law. For the reason that complainant and defendants, both being creditors of Hundley,

Hundley had the right in law to pay complainant his debt, in preference to the defendants.

And for the further reason that there being no levies on Hundley's property the same was, in his hands, the legitimate subject of bargain and sale, and he had a free and untrammeled right to sell it to any purchaser who would pay his price, and no creditor of his had any color of right in the law or equity to prevent his selling it upon the simple ground of his indebtedness.

WADDELL, for appellees.

The question is, whether the conveyance by Hundley to Christian was fraudulent as against Christian, the vendee. *Splawn vs. Martin*, 17 *Ark.*, 152, is the best case for Christian, and will be cited on his behalf to show what is not denied by defendants, to-wit: That, to affect Christian with the fraud, it must be shown that he participated in the fradulent intent. I then turn to the depositions to see what fraud is proved, and what Christian had to do with it. I find that Hundley ran the negroes off for the avowed purpose of evading these very debts; that Christian was informed of the fact, and of Hundley's avowed object; and that with this perfect knowledge of Hundley's fraudulent aim, and while so hiding the negroes out, Christian bought them from him. As to Hundley, the conveyance was fraudulent. As to Christian, he received the conveyance with perfect knowledge of Hundley's intent. Was this a participation in the fraudulent intent? *Splawn vs. Martin* does not say what would amount to a participation in the fraudulent intent. Neither does *Dardenne vs. Hardwick*, 4 *Eng.* 486; nor *Hempstead vs. Johnston*, 18 *Ark.*, 141 (c.); nor any other case in Arkansas. I look into the cases on authority of which *Splawn vs. Martin* was decided. The first case is *Peek vs. Carmichael*, 9 *Yerger*, 327. It expressly decides that if the vendee know of the fraud intended by the vendor, he participates in the intent by taking the conveyance. The next case, *Trotter vs. Watson* 6 *Humph.* 509, *on page* 514, speaks of knowledge of the fraud as

a participation in it, and moreover lays down the law to be as stated in 2d *Kent*, 513 : That the conveyance may well be fraudulent, though a full consideration was paid. Also, in a note to 4th *Kent*, 8th *edition, page* 464, it is said that "if the grantee knows, when he take the deed, that the object of the grantor is to defraud others, the deed is void though he may give a full consideration, and cites *Edgall vs. Lowell*, 4 *Vermont Rep.* 405, and the above case of *Trotter vs. Watson, and English's decisions.* And in *Magniac vs. Thompson*, 7th *Peters S. C. Rep.*, 389, which was decided by Judge STORY upon full argument by able lawyers, the above doctrine both as to *payment of consideration not preventing* the transaction from being fraudulent, and as to *notice of vendor's fraudulent aim implicating the vendee* in the same intent, was admitted on all hands to be incontrovertible. The error assigned in that case was that the court below had held that to implicate the vendee in the fraudulent intent, he must have participated in some manner more active and decided in such intent than by merely receiving the conveyance with knowledge of vendor's intent ; and it was conceded that such a holding of the law by the court below would have been erroneous ; but Judge STORY showed that the court below had not ruled the law that way, but had ruled it the way plaintiff's counsel said it ought to be ruled, to-wit : that taking the conveyance, with knowledge of vendor's fraudulent purpose was a participation by vendee in the fraudulent intent, and no more need be proven against him to invalidate his title. Apply the law, as thus well settled, to Christian's case, and he is a participator in the fraudulent intent, and his title void.

Mr. Justice FAIRCHILD delivered the opinion of the Court.

On the 4th of February, 1856, Christian purchased of Cecilius J. Hundley, two negroes—Ned and Fanny. At the time of the purchase, the negroes were not in Ashley county, the place of Hundley's residence, but were in Louisiana, where they and the other negroes of Hundley had been taken to avoid their subjection to the payment of the debts of Hundley to the appel-

lees, Greenwood & Co. Immediately upon the purchase, the negroes were brought back to Ashley county, Ned went into the possession of Christian, Fanny returned to the employment and house of Hundley, but under hire from Christian, and they thus remained, till in September, 1856, they were levied upon as Hundley's property, in pursuance of directions from the appellees, to satisfy executions which they had sued out against him on judgments obtained in the Circuit Court of Ashley county. To prevent the sale of the negroes under these executions, Christian filed his bill against the appellees, alleging that the negroes were his, and not subject to be applied to the payment of Hundley's debts; he having bought them when there was no lien upon them, in perfect good faith, and upon the payment of a fair and full consideration. An injunction, according to the prayer of the bill was granted.

The answers of the appellees tender an issue as to the ownership of the negroes; the appellees maintaining them to be subject to the satisfaction of their executions against Hundley, as their alleged purchase by Christian was a feigned transaction, made to assist Hundley to defraud the appellees out of the demands represented by the executions.

There are other allegations in the pleadings: in the bill, to show the propriety of the application for an injunction; and in the answers denying this upon the want of jurisdiction of chancery, and alleging facts tending to make good the main defence of fraudulent dealing between Christian and Hundley; but we shall notice only the principal point in the case, because the consideration of that is conclusive of the whole case; and because it is well settled that, if the bill be true, it presents a proper case for the relief for which it asks. *Sanders vs. Sanders*, 20 *Ark.*, 612, 614.

Upon the final hearing of the case, the Circuit Court of Ashley county, sitting in chancery, dismissed the bill, and Christian appealed.

The sale of the negroes to Christian was fraudulent on the part of Hundley, and was made by him to defraud the appel-

lees, and out of these very debts that are mentioned in the pleadings.

But Christian cannot be affected by Hundley's fraud, unless he participated in it by assisting Hundley to put his property out of the reach of the appellees, and appropriating it to himself with a knowledge of Hundley's fraudulent design, and with intent to further the accomplishment of such design. *Dardenne vs. Hardwick*, 4 *Eng.* 486; *Splawn vs. Martin*, 17 *Ark.* 152; *Hempstead vs. Johnson*, 18 *Ark.*, 141; *Ewing vs. Bunkle*, 20 *Ill.*, 463.

The argument that Christian had the same right as the appellees to secure his own debt against Hundley, is good if applicable. If Hundley was owing Christian, he might secure the debt by a voluntary sale from Hundley of his property, as well as the appellees could procure the payment of their demands by the compulsory sale of Hundley's property under execution. And this would be so, though Christian knew that Hundley's object in making the sale was to deprive the appellees of the means of making their debts. On the part of Hundley, the effect of such sale to Christian would be but preferring one creditor to others which the law tolerates, and on the part of Christian, it would only be endeavoring to do by contract what the appellees were doing by law, each trying to secure his own interest. *Pearson vs. Rockhill*, 4 *B. M.* 299.

In such a case, Christian's conduct would not be held fraudulent, as the law would presume that he acted not to defraud other creditors of Hundley, but to secure himself. *Seigler vs. The Knox Co. Bank*, 8 *Ohio State Rep.*, 516; *Ford vs. Williams*, 3 *B. M.*, 557.

A creditor, buying the property of an insolvent debtor to secure his own demand, has the same equity that other creditors have ; each has an equitable interest in the debtor's property ; and the legal title, conjoined to an equity, will overcome a mere equitable interest. *Seymore vs. Wilson*, 5 *Smith*, 421, 418. Although the law will not restrict a creditor from buying enough property, from a failing or fraudulent debtor, to pay the whole

debt, or from buying all the debtor's property, and applying it to the extinguishment of the debt, as far as it will go, the buyer must allow a fair price for the property, and must not buy more than is necessary for his own protection. *Ford vs. Williams*, 3 *B. M.* 557. We do not intimate that the value of the property bought must be less, or must be no more, than the debt to which it is applied, but it would be a suspicous fact that the purchase should include parcels of property, one piece of which would pay the debt; and the cause for suspicion would be increased, if the overplus should be paid in money, or with a consideration that would be invisible to other creditors.

In a case where the price of the property bought was nine hundred dollars, and the debt on which it was bought was six hundred and sixty dollars, the court of appeals of Kentucky upheld the sale, notwithstanding the excess of two hundred and forty dollars was paid in money, and was not shown to have been paid on debts of the insolvent seller of the property, because the property, being that of a female slave and two infant children, was not such as the law or good conscience required to be separated, and because a fair price was given for the whole of the negroes. *Young vs. Stallings*, 5 *B. M.* 307.

And so in this case, if Christian had shown himself a creditor of Hundley for the amount that he paid on Ned and Fanny, in claims upon Hundley, that amount being four hundred and nineteen dollars, according to the testimony of Barnes, or five or six hundred dollars as to be gathered from Hundley's own deposition, we should not be disinclined to grant the desired relief to Christian, if his purchase had extended only to one of the negroes, or if it had extended to both, and there were good reasons for them not to be sold separately, and his conduct had been in other respects that which was only attributable to a creditor, successful in the race of diligence against the appellees.

But Christian does not occupy the advantageous position of a creditor of Hundley upon which to rest his purchase of Hundley's negroes. Barnes and Hundley are the only persons who

testify about the payment for Ned and Fanny; and Hundley who may be supposed not to be under any bias against Christian, says that Christian paid him in cash, nine hundred or a thousand dollars, and in an account against him, in one against his mother, and in one or two against his brother. That is no proof at all that Hundley was indebted to Christian in any specific amount; and Christian must take the place of a stranger who purchases property from a fraudulent seller, and that is one that is far different from being a creditor, endeavoring out of the wreck of an insolvent debtor's property to find something to save his own debt. Still, if Christian bought the negroes of Hundley, there being no lien upon them in favor of the appellees, and paid the value of them without notice of Hundley's fraud, his equity as a purchaser, is at least equal to the equity of the appellees to have their debts paid out of Hundley's property, and the legal title derived from the purchase will prevail. His position as a purchaser is different and less favorable than that of a purchasing creditor, for as a purchaser he will be held to be a participator in Hundley's fraud, if he have notice of it, and still deal with him, and thereby afford him the means to make his fraudulent efforts against his creditors successful. *Seymore vs. Wilson*, 5 *Smith*, 420.

And this is the case, notwithstanding he may have paid a full price for the property. 2 *Kent* (8*th Ed.*) 674; *Beals vs. Guernsey*, 8 *John*. 452. These two authorities refer to property bought in fraud of a judgment, but the reference being to personal property, which a judgment does not bind, the authorities are not inapplicable to this case.

The appellees are judgment creditors, are shown to be so by the bill which alleges the extent of the executions upon Christian's negroes and though they were not so when Christian bought the negroes, it was from the fraud of Hundley that they were not at that time, and of this fraud, executed with relation to these debts of the appellees, Christian was informed in October, 1855, by the agent of the appellees.

To have the benefit of the perpetuation of his injunction

Christian should have shown a clear title to the negroes, that is, one unaffected by any taint of fraud. This he has not done. He knew that Hundley had run off these and four other negroes, all he owned, to Louisiana; he had been told by the agent of the appellees that Hundley acknowledged that he had run them off to avoid the debts that he prays not to be extended over the negroes Ned and Fanny. Knowing of these debts, and not knowing of any others that Hundley owed, as it may be presumed he did not know of debts that Hundley could not recapitulate, he did not see that the money he paid to Hundley or that any part of the twenty-five or twenty-six hundred dollars, which Hundley got for the other negroes, was applied or intended to be applied by Hundley to their satisfaction; he bought the negroes out of the usual course of business, by buying them when they had been run out of the state, and while they were absent; he paid mostly in cash for them, which could not but aid Hundley in his design to defraud the appellees.

In view of these facts, though we are not called upon to say that Christian was an active participator in Hundley's fraud against the appellees, we are sure that he has not presented such a case as entitles him to the protection of a court of equity. He is brought within the cases that hold that a grantee that has knowledge of the fraud of a grantor must be held responsible for it to the extent of his dealing with him, and that indulge the presumption of a fraudulent intent on his part, as well as against the grantor. *Ford vs. Williams*, 3 *B. M.* 558; *Partilo vs. Harris*, 26 *Conn.* 482.

The Circuit Court sitting in chancery, properly dismissed the bill of Christian, but that dismissal and the affirmance here are not intended to affect Christian's legal right, only to declare that a court of equity will not interpose in his behalf against the appellees.