# Ashford *v.* Watkins.

*Bill in Equity for Cancellation of Mortgage, and Injunction of Action at Law by Purchaser at Mortgage Sale.*

1. *Private statutes relieving married women of disabilities of coverture.* From the earliest history of legislation in Alabama, it was a common practice to relieve particular married women by name, by special, private statute, of the disabilities of coverture, either generally, or to a limited extent; such enactments resting on the prerogative rather than the legislative power of the General Assembly—that is, its power as *parens patriæ* over the person or property of citizens resting under legal disabilities; and these statutes have always been construed, like the general "married women's laws," to modify or remove the disabilities of coverture only to the extent declared or expressed in them.

2. *Removal of disabilities of coverture by decree of chancellor.*—Under the statute approved February 10th, 1875, amending the former statute approved April 15th, 1873 (Sess. Acts, 1874-5, pp. 194-5; Code, § 2731), jurisdiction is conferred upon the several chancellors, to be exercised either in term time or in vacation, "to relieve married women of the disabilities of coverture as to their statutory and other separate estates, so far as to invest them with the right to buy, sell, hold, convey and mortgage real and personal property, and to sue and be sued as *femmes sole;*" but this statute does not confer the general prerogative power formerly exercised by the General Assembly, but only a special power, bounded and limited by the terms of the grant, and which must be exercised in its entirety; and while proceedings under the statute, when the jurisdiction has attached, may be liberally construed, the jurisdiction can not be extended by construction.

3. *Same.*—A decree rendered by the chancellor, on the petition of a married woman, adjudging and decreeing "that she be and is hereby declared to be a *femme sole* only so far as to invest her with the right to mortgage her said house and lots in order to obtain an addition to her stock of goods and merchandise," is not authorized by the said statute, and is a nullity.

4. *Mortgage of wife's lands, by husband and wife.*—A mortgage executed by husband and wife, conveying lands belonging to the wife's statutory estate, is an absolute nullity, both at law in equity.

APPEAL from the Chancery Court of Lawrence.
Heard before the Hon. THOMAS COBBS.

[Ashford v. Watkins.]

The bill in this case was filed on the 17th September, 1879, by Mrs. Eugenia Ashford, against Peyton L. M. Watkins; and sought the cancellation of a mortgage on a house and lot in the town of Courtland, which the complainant claimed as belonging to her statutory separate estate, and an injunction of an action at law which the defendant had instituted against her to recover the possession of the house and lot, claiming as the purchaser at a sale made under the mortgage. The complainant and her husband, Hamet Ashford, were married in said county of Lawrence, during the year 1864. The house and lot (or lots) were conveyed to Mrs. Ashford by D. B. Campbell and wife, by deed dated April 24th, 1875, which recited the payment of $500 as its consideration, and a copy of which was made an exhibit to the bill. The mortgage, a copy of which was also made an exhibit to the bill, was dated December 6th, 1875, signed by Mrs. Ashford and her husband, and by them duly acknowledged; recited an indebtedness of $1,500 by Mrs. Ashford to Sledge, McKay & Co., "for goods and merchandise this day advanced by them to replenish my [her] stock in Courtland," and alleged to have been furnished on the security of the mortgage; and conveyed the said house and lots, with power of sale if default should be made in the payment of the debt on or before the 1st June, 1877. This mortgage was assigned by Sledge, McKay & Co., by written transfer indorsed on it, on the 8th April, 1878, to said P. L. M. Watkins, the defendant, the assignment reciting, as its consideration, the payment of $727.80 by him. Default having been made in the payment of the secured debt, Watkins advertised the property for sale under a power contained in the mortgage, and became himself the purchaser at the sale; and he then brought an action at law to recover the possession, which action the bill sought to enjoin.

To sustain the validity of the mortgage, the defendant relied on a decree rendered by Hon. H. C. Speake, as chancellor, at chambers, in vacation, on the 4th December, 1875, a copy of which decree, with the petition on which it was founded, was also made an exhibit to the bill. The petition was filed by Mrs. Ashford, by her next friend, on the 1st December, 1875, alleging that she possessed, as her statutory separate estate under the laws of Alabama, the said house and lots, which were particularly described, " and a small stock of goods and groceries in Courtland; that her means have•been invested in said stock of goods and groceries, and her living is dependent on the same; that her said stock needs replenishing, and having no credit, being a married woman, she can not do so, unless she can use her said house and lots as means of credit in obtaining necessary additions to her said stock." The prayer of the petition

[Ashford v. Watkins.]

was for a decree " declaring her a free-dealer, relieving her from the disabilities of coverture so far only as to invest her with the right to mortgage her said house and lots in order to obtain an addition to her stock of goods and merchandise." The husband filed an answer to the petition, admitting its allegations, and assenting to the relief prayed; and the chancellor rendered a decree, after reciting the facts, in these words: " It is therefore ordered, adjudged, and decreed by the court, that the said Eugenia Ashford be, and she is hereby, declared to be a *femme sole* only so far as to invest her with the right to mortgage her said house and lots in order to obtain an addition to her stock of goods and merchandise."

The complainant insisted, in her bill, that this decree was not authorized by the statute under which the proceedings were had, and that the mortgage was null and void; and she assailed the consideration and recitals of the mortgage on several grounds, which require no notice. The chancellor held the decree and the mortgage both valid, and dismissed the bill; and his decree is now assigned as error.

E. H. FOSTER, for appellant.—The statute under which the proceedings were had, the validity of which is here assailed, creates an entirely new jurisdiction, in derogation of the common law; and whether that jurisdiction is conferred on the chancellor or the court, the validity of the proceedings must he determined by the same principle which applies to the proceedings of every tribunal exercising special and limited powers—that is, it must appear that the statute was strictly pursued, or the judgment will be null and void.—*Foster v. Glazener*, 27 Ala. 391; *Gunn v. Howell*, 27 Ala. 663; *Lamar v. Comm'rs Court*, 21 Ala. 772; *Wyatt v. Rambo*, 29 Ala. 510; *Lamar v. Gunter*, 39 Ala. 324; 10 Wendell, 75; 1 Mass. 103; 2 East, 221; *Wilburn & Co. v. McCalley*, 63 Ala. 436. The statutory power is limited and controlled by each and all of the words used in the act creating it; it is indivisible, and must be exercised as an entirety, and is exhausted when once exercised. It never could have been contemplated that a different decree should be rendered in each case, according to the caprices of the several petitioners; or that the same person should be allowed to hold different pieces of property under different liabilities, and to change them at pleasure. A decree, such as the statute authorizes, removes the husband from the trusteeship of the wife's estate, and destroys its statutory liability for necessaries; but, at the same time, it imposes upon her the liabilities of a *femme sole*, and authorizes her to be sued as such. The decree here assailed does none of these things, but leaves the husband, the wife, and her property, in an anomalous condition. How

[Ashford v. Watkins.]

does it affect the rights of the husband as trustee? How does it change the liabilities of the wife or her property, or the remedy against them? If the husband or wife should redeem, how would the property afterwards be held? Remediless confusion would necessarily result from such a construction of this statute.

P. L. M. WATKINS, *pro se, contra.*—Although the statute under which this decree was rendered creates a new jurisdiction, it is nevertheless a remedial statute, and proceedings under it should receive a liberal construction, when the jurisdiction is affirmatively shown. A decree granting powers to a married woman, in excess of those specified in the statute, would be void, at least for the excess; but a decree granting less powers than those specified, or confining the granted powers to a portion only of the petitioner's property, or to all the property then owned by her, excluding future acquisitions, could not be held void for want of jurisdiction. Under the general statutes, a married woman may hold a statutory estate, and an equitable estate in different property; and as to her equitable estate, her powers over it, and its liability for her contracts, may be governed by very different rules, according to the provisions of the several instruments under which the property is held. No confusion has resulted from these different kinds of estates, which has required legislative interference; and none can result from any decrees rendered by the chancellor, which are within the terms of this special statute.

BRICKELL, C. J.—From the earliest history of our legislation, until the enactment of the statute approved April 15th, 1873 (Pamph. Acts, 1872–3, p. 93), which was amended by an act approved February 10th, 1875 (Pamph. Acts, 1874–5, p. 194), the enactment of special, private statutes, relieving particular married women, partially or entirely, from the disabilities of coverture, was a common practice. All such enactments were attributed to the prerogative, rather than to the legislative power of the General Assembly—the power, as *parens patriœ*, over the person or property of the citizen resting under legal disabilities; the power exercised in the emancipation of infants, or in the superintendence and control of their persons and estates. These enactments varied in form and in terms, dependent upon the wishes and purposes expressed in the application for their passage. Sometimes, the married woman was, as to property and the rights to property, the capacity to contract, and to sue and be sued, converted into a *femme sole*, or, as it was most often termed, a *free-dealer*. In some instances, she was simply invested with capacity to

hold property, or her separate earnings, to her separate use; or to receive and hold a legacy, or distributive share, accruing to her; or to hold property with a limited power of disposition; or to mortgage her statutory separate estate, generally, or for specific purposes.

These enactments, like the general statute creating and defining the separate estates of married women, have been construed as relieving from, or modifying the disabilities of coverture, only to the extent expressed in them. Beyond their express provisions, the woman has not been regarded as *sui juris*, or as having larger capacity to contract than she had at the time of their enactment. The uniform construction of the general statute has been, that while it enlarged the capacity of the wife to take and hold property owned by her at the time of the marriage, or accruing to her subsequently, it did not enlarge her capacity to contract, even in reference to her separate estate, except in the mode and for the purposes pointed out and prescribed.—*Alexander v. Saulsbury*, 37 Ala. 375; *Warfield v. Ravisies*, 38 Ala. 518; *Bibb v. Pope*, 43 Ala. 190. In *Hatton v. Weir*, 19 Ala. 127, the General Assembly, by joint resolution, authorized a particular married woman "to take, receive, and hold, by gift, purchase, or inheritance, any property, real or personal, free from the molestation, hindrance, or authority of her husband, and free from any liability to pay his debts or contracts, and the same to dispose of by will, gift or sale, in the same manner as if she were a *femme sole*." The resolution was silent as to the capacity of suit; and in the purchase of property, for the price, she gave a promissory note; and it was held an action at law thereon could not be maintained. A construction of the resolution which would subject her to a personal suit, it was said by the court, "would be far beyond the intention of the legislature."

The act of 1875, of force when the proceedings were had before the chancellor, upon the efficacy of which depends the validity of the mortgage executed by the appellant, contained a clause prohibiting the subsequent presentation to the General Assembly of any bill "to make any married woman a free-dealer, or invest her with the rights of a free-dealer," unless such bill was accompanied with a transcript of the record from the Chancery Court, showing an application to the chancellor in conformity to the act, the refusal of the application, and the reasons for the refusal. This clause may not have been binding on subsequent legislatures; yet, when it is read in connection with the preceding parts of the act, there is manifested a clear legislative intention to delegate to the chancellor, sitting in term time or in vacation, exclusive power to relieve married women from the disabilities of coverture, "*so far as to invest*

*them with the right to buy, sell, hold, convey and mortgage real and personal property, and to sue and be sued as a femme sole.*" The prohibitory clause is omitted from the re-enactment of the statute by the Code of 1876 (§§ 2731–2), on the theory, perhaps, that it was rendered useless by the section of the constitution of 1875, prohibiting the enactment of "any special or local laws, for the benefit of individuals or corporations, in cases which are or can be provided for by a general law, or when the relief sought can be given by any court of this State." The act must be construed as a special private statute, upon the same subject, having in view similar objects, and the general law creating the statutory estates of married women, were construed. The presumption is, that the legislature was informed of the construction these statutes had received, and intended that it should prevail, so far as a purpose to modify or change it is not indicated.

The statute is a delegation to the *chancellor,* not to the *Chancery Court,* of a power that, prior to its enactment, the General Assembly had reserved to itself, not delegating it to any judicial tribunal or officer. In the absence of the statute, the chancellor could not exercise the power. The *status* of a married woman, with its rights and disabilities, the general municipal laws define and establish. The alteration of this *status,* as to particular persons, does not lie within the original, inherent jurisdiction of any department of the judiciary, as created by the constitution. Deriving the power wholly from the statute, the chancellor, in its exercise, is bounded and limited by the terms of the statute. The power he can exercise, is the power conferred by the statute—no greater or less power, whatever may be the wishes or purposes of suitors, or the real or seeming exigencies and necessities of particular cases. The power is to relieve particular individuals from the general disability the law, upon its own policy, imposes on the class of citizens to which they belong. It is not necessary to say the statute must be subjected to a strict construction; perhaps, in reference to the proceedings it authorizes, a liberal, rather than a strict construction, would be properly extended to it; but it can not be construed as conferring any other power than that which is in terms defined and declared. The power conferred is not the general prerogative power the General Assembly had been accustomed to exercise, of removing entirely the disabilities of coverture, or of removing them only partially, or of investing them with capacity to make particular contracts, or to make particular dispositions of property. The power is precisely defined, and is, "to relieve married women of the disabilities of coverture, as to their statutory and other separate estates, *so far as to invest them with the right to buy, sell, hold, convey,*

11

[Ashford v. Watkins.]

*and mortgage real and personal property, and to sue and be sued as femmes sole.*" This is the power, and there seems to have been much of legislative caution in its expression. A general capacity to contract is carefully withheld; the only contracts authorized are such as touch and concern property. Therefore, in *Dreyfus v. Wolffe*, 65 Ala. 496, speaking of the statute, we said, "It is entirely enabling in its purpose. It does not, in general terms, constitute her a free-dealer, or confer on her all the powers of a *femme sole.* It specifies the extent to which such powers are conferred. This it does *ex industria*, for it is twice repeated in the statute."

The power exercised by the chancellor in the decree rendered, the validity of which is assailed, was not the power expressed in the statute. In some respects, it was larger, and in some narrower, than that power. The appellant, to employ the words of the decree, was "declared a *femme sole* only so far as to mortgage her said house and lots in order to obtain an addition to the stock of goods and merchandise." Her capacity as a *femme sole* is limited to a particular disposition, for a particular purpose, of particular property, and would terminate when that disposition was made. The purpose of the disposition is to enable her to *obtain an addition to her stock of goods and merchandise.* From the application it is apparent she was engaged as a trader in the buying and selling of goods and merchandise, and the continuation of the trade is the very reason and purpose of investing her with power to mortgage this specific real estate—a power the law withholds from married women in respect to the estates it declares they hold separate from the husband. If the decree is valid, it legalizes the continuation of the trade, and invests her with the capacity of a sole trader in merchandise,—a capacity she has not at common law, or under the statute creating separate estates. *Wilder & Co. v. Abernathy*, 54 Ala. 644; *Dreyfus v. Wolffe*, 65 Ala. 496.

The power the chancellor can exercise, is to relieve the married woman from the disabilities of coverture, to the extent precisely expressed. To that extent, by the decree, her *status* is changed, and permanently changed—she becomes a *femme sole*, and she can not be restored to the condition of a *femme covert.—Halliday v. Jones*, 57 Ala. 525. If she did not mortgage the house and lots under the power conferred by the decree, her *status* as a *femme covert* would remain unchanged; or if, having mortgaged, she redeemed, her *status* would be restored. If she mortgaged for any other than the purpose specified, the power conferred would not be exercised, and from the decree the mortgage could not derive operation and effect. As to all other of her property, now owned, or which

[Ashford v. Watkins.]

may be subsequently acquired, her tenure is unchanged, and her *status* is that of a *femme covert.* The embarrassments attending the administration of the laws concerning the separate estates of married women, which now comprise a large, if not the larger, part of the lands of the State, the alienation of which is attended with doubt and uncertainty, seriously affecting values, would be multiplied, if particular parts of the estate could be separated, and impressed with a different tenure from that by which the remainder is held. It was not intended to confer on the chancellor authority, or jurisdiction, to relieve a married woman temporarily from the disabilities of coverture, as to particular property, that she could secure by mortgage debts she had not the capacity of contracting. That, in its last analysis, is the effect and operation of the decree, under which the mortgage purports to have been executed by the appellant. The power the chancellor can exercise, and the only power, is to relieve the wife from the disabilities of coverture, as to her statutory or other separate estate, so far as to invest her with the right to buy, sell, hold, convey, and mortgage real and personal property, and to sue and be sued as a *femme sole.* Beyond this, the chancellor can not exercise jurisdiction. When the power is exercised, the change in the *status* of the wife is permanent, and it extends to all her property. It is relief from the disabilities of coverture, the grant of capacity to buy, sell, &c., only as to her statutory or other separate estate, which is intended by the statute, and so in terms expressed.

The decree, like all judicial sentences, depends for validity on the jurisdiction of the chancellor. The want of jurisdiction to change, temporarily and partially, the *status* of the appellant as a married woman—to convert her into a *femme sole* for a specific purpose, and as to specific property—renders the decree void. The mortgage rests for its validity, of consequence, wholly on the power of husband and wife to mortgage the statutory separate estate. While husband and wife may, by an instrument in writing executed in the mode prescribed by the statute, *sell,* they can not pledge or mortgage the separate estate of the wife. A mortgage of it is simply void—void at law and in equity.—*Peeples v. Stalla,* 57 Ala. 53; *Chapman v. Abrahams,* 61 Ala. 108; *Shulman v. Fitzpatrick,* 62 Ala. 571.

The decree of the chancellor must be reversed, and a decree will be here rendered, granting relief to the appellant.