R. A. WALLING, W. A. WALLING AND H. H. RATLIFF,
    APPELLANTS, VS. THE CHRISTIAN & CRAFT GROC-
    ERY COMPANY, A CORPORATION, THE R. D. DUNLOP
    MERCANTILE COMPANY, A CORPORATION, A. G.
    LEVY AND SAMUEL HAVERMAN, COMPOSING THE
    PARTNERSHIP FIRM OF A. G. LEVY & CO., AND
    MARCUS LAWENSTEIN AND LOUIS LAWENSTEIN,
    COMPOSING THE PARTNERSHIP FIRM OF LAWEN-
    STEIN BROS., APPELLEES.

1. The law in the State in which real estate is situated furnishes
   the rule as to its descent, alienation and transfer, the con-
   struction and validity of conveyances thereof, and the capacity
   of the parties to such conveyances, as well as their rights under
   the same.

2. A married woman was made a free dealer by decree of a chanc-
   ery court in the State of Alabama, under section 2731 of the
   code of 1876, which did not authorize her to be made a free
   dealer with general powers to contract as a *feme sole*, but only
   in reference to her statutory and other separate estate to the
   extent mentioned in the statute, and no further; she subse-
   quently moved to this State, acquired separate statutory real
   estate, and engaged in the mercantile business of buying and

480

SUPREME COURT.

[41st Fla.

Walling v. The Christian & Craft Groc. Co.—Statement of Case.

selling goods: *Held*, that she did not acquire the status of a free dealer under the laws of this State by virtue of the decree made in the State of Alabama, and that a bill in equity was proper to subject her separate statutory property to the payment of debts contracted by her for goods used in her mercantile business.

3. Under the laws of Florida the husband and wife must join in all sales, transfers and conveyances of the property of the wife. In reference to personal property the rule is liberal, but some joinder of the husband and wife in the disposition must be shown and in reference to real estate it must be done by deed acknowledged by the wife before some officer authorized to take acknowledgments, separately and apart from her husband, that she executed the deed freely, voluntarily and without compulsion, constraint, apprehension or fear of or from her husband.

4. A creditor, knowing that his debtor is insolvent and engaged in disposing of his property in order that it might not be reached by pressing creditors, can not purchase more than is necessary to protect himself of such debtor and pay him the difference in cash.

Appeal from the Circuit Court for Jackson county.

## Statement.

A bill in chancery was filed by appellees against appellants, and the following in substance was alleged: That R. A. Walling was during the year 1892, and still is, a married woman, the wife of W. A. Walling; that during said year and until the 10th day of January, 1893, she was engaged in a mercantile business in Cottondale, Jackson county, Florida, and which business was under the care and management of her husband; that said R. A. Walling was seized and possessed, as her own separate statutory estate, of a stock of merchandise employed in her said business, a lot of corn, mustang ponies, yoke of oxen and a wagon, and also certain real

estate, particularly described, situated in said county; that during the year 1892 the said R. A. Walling bought goods, wares and merchandise from appellees, to be added to her said mercantile business, and that she has never paid for the same, though past due.   The bill specifies particularly the indebtedness due to each appellee, being exhibited by open accounts, except in one case which was a note executed by the said R. A. Walling.   It is further alleged that the said R. A. Walling, combining and confederating with her said husband and H. H. Ratliff to defraud appellees and other creditors of the said wife, did, in pursuance of said purpose, pretend, on the 10th day of January, 1893, to execute to the said Ratliff a bill of sale for her stock of merchandise, and a bill of sale to her said husband for the mustang ponies, yoke of oxen and wagon; and also a pretended deed of conveyance to her said husband of all of her said described real estate; that said property pretended to be conveyed was all that the said R. A. Walling owned, and the said bills of sale and deed were executed in pursuance of a plan devised and conceived by said parties to defraud the creditors of the said R. A. Walling out of their just demands.   Further, that in said bills of sale and deed of conveyance the said R. A. Walling asserts herself to be a free dealer, but it is alleged that said assertion is false, and that she has never complied with the statutes of this State on the subject, and has never obtained a license from any court of chancery in this State to take charge of and manage her own estate and become a free dealer.   In addition to the fraudulent intent in making said bills of sale and deed it is alleged that the same are null and void because the husband, W. A. Walling, did not join in the execution thereof; that no consideration passed to the grantor therein, and that no

change of possession of the property had taken place after the pretended sale, and that the said Ratliff was a poor man without any means to make the purchase. It is also alleged that defendants will make other fraudulent, collusive and covinous sales of said property unless prevented from doing so by injunction of the court. Specific interrogatories covering the allegations of the bill were submitted for appellants specifically to answer. The bill prays that the said bills of sale and deed be declared void as against appellees and the said property be charged with the payment of their just demands to be ascertained by the court; that an injunction issue to restrain appellants from disposing of the property, and that a receiver be appointed to take charge of the personal effects.

Appellants, as defendants below, filed a plea setting up that R. A and W. A. Walling were married in the State of Alabama, and were resident citizens of that State during the entire year 1885, and that in December of that year upon petition of the said R. A. Walling praying that she be declared a *feme sole*, the Hon. John A. Foster, Chancellor of the Eleventh District, southern chancery division of said State, entered a decree as follows: "That R. A. Walling, wife of William A. Walling, be and she is relieved of the disabilities of coverture as to her statutory or other separate estate so far as to invest her with the right to buy, sell, hold, convey and mortgage real and personal property and to sue and be sued as a *feme sole*." It is also alleged that the court aforesaid had jurisdiction of the persons and of the subject-matter so ordered, and that said order is still in force and unreversed; that in April, 1886, immediately upon the removal of the said R. A. and W. A. Walling to Jackson county, Florida, they had a copy of said de-

cree recorded in chancery record book B, page 11, of
the Circuit Court of said county, and this record was
made before the said R. A. Walling contracted any
debts, or acquired any real estate in Florida.   Appellees
filed before the chancellor affidavits tending to support
the allegations of their bill, and appellants offered a copy
of the Alabama decree certified as a correct copy of the
decree by the Register in Chancery in and for the
Eleventh District of Southern Chancery Division.   The
chancellor rejected this copy, and thereupon appellants
offered a copy of the same.decree which had been re-
corded in Jackson county, Florida, and certified to by
the clerk of the Circuit Court of said county as being a
correct copy from the records in his office.   This was
also refused by the chancellor, and upon the bill, affi-
davits and plea an injunction was granted restraining
appellants from alienating said property.   Answer was
subsequently filed by appellants admitting, in response
to interrogatories, that R. A. Walling was a married
woman engaged in the business of buying and selling
merchandise, and was seized and possessed of the prop-
erty, real and personal, as her own statutory separate
estate at the place and during the time alleged in the
bill.   It is alleged that R. A. Walling had no visible
property except such as pertains to wardrobe and claims
belonging to her mercantile business amounting to
about fifteen hundred dollars, the value of which could
not be stated, but it was believed that a portion could
be collected by reasonable indulgence.   It was admitted
that R. A. Walling had executed bills of sale and deed as
alleged and that they embraced all of her visible prop-
erty except as stated; that her object in executing the
same was to close her business, collect what was due her
as far as possible, pay her debts as far as she could and

484 SUPREME COURT. [41st Fla.

Walling v. The Christian & Craft Groc. Co.—Statement of .Case.

retire from the business, as she discovered that it was not prosperous and some creditors were pressing her, though the amount of the claims due her were much larger than the amount she owed, exclusive of a note she owed her husband upon which was due, including interest, $1,392; said note being executed by her and her son, R. E. Walling, to her said husband; that the consideration of the property sold to W. A. Walling was a credit of $1,215 on said note; that the stock of goods was sold to Ratliff & Co., for $420; $260 of which was borrowed money which he had loaned to R. A. Walling on several previous occasions, and $160 was paid cash by him on the day of the transaction; that the property was sold for full value and even more than it would bring at forced sale. It is denied that the sales were made for any purpose to defraud the creditors of the said R. A. Walling, and it is alleged that the sales were made to her creditors who were induced to buy and pay full value for said property in order to save their claims, as suits were threatened against R. A. Walling at the time, although she had done everything in her power to obtain reasonable indulgence from her creditors with a view to paying up her debts as far as possible; that she had not been in possession of any portion of the said property since said sale, but the said purchasers had the possession, custody and control of the parts purchased by them respectively, except so far as may be modified by the injunction granted.

R. A. and W. A. Walling, answering for themselves, aver that the former went into partnership as a free dealer with her son R. E. Walling, principally with funds which she received from her father as her own separate statutory estate; that in March, 1890, W. A. Walling loaned them $1,200 and took their joint note, payable

first of January following, with eight per cent. interest, and the value of the property sold to him was credited on said note; that R. A. Walling had no license to take charge of and manage her own estate from any court of chancery of the State of Florida, but she had been made a free dealer by decree of a chancery court of the State of Alabama as alleged in the plea filed. Ratliff, for himself, alleges that he was not a man of very considerable means when he came to Cottondale, Florida, but had several hundred dollars which he continued to increase from time to time after his arrival, by labor and frugality; that he had within sixty dollars of the amount he was to pay for the goods, including the sums he had recently before loaned Mrs. Walling, and on the day of sale, borrowed the sixty dollars to make up the full amount and paid it in cash to her; that he did not profess to be an expert in the mercantile business, but had had several years' experience in such pursuit as clerk or salesman, and felt perfect confidence in his ability to manage such business; he avers that so far as he is concerned, the transaction was fair and *bona fide* for a full, valuable consideration, his principal object being to secure the money he had loaned Mrs. Walling, and not to defraud or injure any one.

The plea of defendants was set down for hearing and overruled; replication was then filed to answer of defendants. Defendants moved the court to dissolve the temporary injunction granted, and on the hearing offered in evidence a certified copy of the entire proceedings in the Alabama court in reference to relieving R. A. Walling, under the statutes of Alabama, of the disabilities of coverture as to her statutory or other separate estate, so far as to invest her with the right to buy, sell, hold, convey and mortgage real and personal property, and

to sue and be sued as a *feme sole*. The court declined to consider the offered evidence, refused the motion to dissolve the injunction, and appointed receivers to take charge of the personal property.

Defendants appealed, and assign as error the granting of the temporary injunction, and refusal to consider the certified copies of the decree from the chancery court of Alabama, the overruling of the plea of defendants, and refusal of the court to dissolve the temporary injunction, and in appointing the receivers.

The other facts in the case are stated in the opinion of the court.

*D. L. McKinnon and Francis B. Carter*, for Appellants.

*Benj. S. Liddon*, for Appellee

(Mr. Justice Carter being disqualified took no part in the decision of this case.)

MABRY, J.:

The assignments of error question the correctness of the order granting a temporary injunction and overruling the plea. The theory of the defense interposed by the plea, which had been filed when the order was made, is that Mrs. R. A. Walling had acquired by the Alabama decree mentioned therein the status of a free dealer, subject to be sued at law by complete and adequate remedies, and that this status accompanied her as a personal qualification to this jurisdiction. Some question was raised, it seems, as to the sufficiency of the certification, or the transcript of the record in the Alabama court, but waiving that, we consider as presented the

question whether Mrs. Walling can claim in this juris-
diction the status of a *feme sole* to the extent accorded her
under the Alabama statute by the decree of the chancery
court in that State. It appears that the Alabama decree
which Mrs. Walling invoked was made under Section
2731 of the Alabama Code of 1876, and this did not au-
thorize her to be made a free dealer with general powers
to contract as *feme sole*. This section has been declared
by the Alabama court to be simply an enabling act—
narrowly enabling—for the purpose of authorizing a
married woman to become a *feme sole* in reference to her
statutory and other separate estate to the extent men-
tioned in the statute, and no further. It seems that a
strict construction has been placed on this statute, and
it has been regarded as establishing an exception to the
general law then in force in reference to the capacity of
married women to deal with their separate property.
Dreyfus v. Wolffe, 65 Ala. 496; Ashford v. Watkins, 70
Ala. 156; Cohen v. Wollner, Hirschberg & Co., 72 Ala.
233; Cook v. Meyer Bros., 73 Ala. 580; Falk v. Hecht,
75 Ala. 293; Hatcher v. Diggs, 76 Ala. 189; Parker v.
Roswald, 78 Ala. 526. Conceding, as appears to be the
ruling in the last case cited, that if Mrs. Walling had
engaged in a mercantile business in Alabama after the
rendition of the decree, and had bought goods, she could
be sued at law for the value of the same, the question
occurs whether this status obtained by her in Alabama
can be insisted on in this State after her permanent do-
micile here and as to transactions had in this jurisdic-
tion. In our opinion a negative answer must be given
to this question. To avoid any misconception as to the
extent of our ruling, it is deemed proper to state that no
question arises as to the validity or rights under any
contract made by Mrs. Walling while she was a citizen

of or in the State of Alabama, nor does it appear that
she brought to this jurisdiction any property acquired
by her under her Alabama status. It does appear that
she acquired real property in this State after she moved
here, and this property in part is the subject of the pres-
ent litigation. So far as this character of property is
concerned, it is the universal rule that the laws of the
State where it is situated furnish the rules for its descent,
alienation and transfer, the construction and validity of
conveyances thereof, and the capacity of the parties to
such contracts and conveyances, as well as their rights
under the same. Thompson v. Kyle, 39 Fla. 582, 23
South. Rep. 12. If Mrs. Walling resided in Alabama
and under the law of her domicile had the capacities of a
*femé sole*, she would still have to comply with the laws of
this State in reference to contracts and conveyances of
real property situated here. Story says (Conflict of
Laws, §101) that "the capacity, state and condition of
persons according to the law of their domicile will gen-
erally be regarded as to acts done, rights acquired, and
contracts made, in the place of their domicile, touching
property situate therein. If these acts, rights and con-
tracts have validity there, they will be held equally valid
elsewhere. If invalid there, they will be held invalid
elsewhere." In recognition of this rule, marriages valid
where celebrated or contracted are regarded as valid
elsewhere without reference to the domicile of the forum
where the question of their validity may arise. Con-
tracts by married women, valid under the laws where
made though void under the laws of another domicile,
have been enforced in the courts of the latter. Thus, a
married woman resident in Kentucky was made a free
dealer under the laws of that State and entered into a
valid contract there; the courts of Tennessee enforced

the contract against her though by the laws of the latter·
State her contract would be invalid. Robinson v. Queen,
87 Tenn. 445. See, also, Milliken v. Pratt, 125 Mass.
374, S. C. 28 Am. Rep. 241; Hill v. Chase, 143 Mass.
129, 9 N. E. Rep. 30; Bell v. Packard, 69 Me. 105, S. C.
31 Am. Rep. 251; Bowles v. Field, 78 Fed. Rep. 742. It
was decided in Scudder v. Union National Bank, 91 U.
S. 406, that matters bearing upon the execution, inter-
pretation and validity of a contract are determined by
the law of the place where it is made.   Matters con-
nected with its performance are regulated by the law
prevailing at the place of performance.   Matters respect-
ing the remedy depend upon the law of the place where
the suit is brought.   See, also, Ruhe v. Buck, 124 Mo. ·
178, 27 S. W. Rep. 412; Bank of Louisiana v. Williams,
46 Miss. 618, S. C. 12 Am. Rep. 319.   After a thorough
examination of the authorities, Story concludes as fol-
lows (Section 103, Conflict of Laws,):  "Hence we may
deduce, as a corollary, that in regard to questions of
minority or majority, competency or incompetency to
marry, incapacities incident to coverture, guardianship,
emancipation and other personal qualities and disabili-
ties, the law of the domicile of birth, or the law of any
other acquired and fixed domicile, is not generally to
govern, but the *lex loci contractus aut actus*, the law of the
place where the contract is made or the act done.   There-
fore a person who is a minor until he is of the age of
twenty-five years by the law of his domicile, and incapa-
ble as such, of making a valid contract there, may never-.
theless in another country, where he would be of age at
twenty-one years, generally make a valid contract at that
age, even a contract of marriage."   The reasoning of
the court in the following cases sustains this view:  Poly-
dore v. Prince, Ware (U. S. Dist. Ct.) 402; Common-

490 SUPREME COURT. [41st Fla.

Walling v. The Christian & Craft Groc. Co.—Opinion of Court.

wealth v. Green, 17 Mass. 514; Saul v. His Creditors, 5 Martin (n. s.), 569, S. C. 16 Am. Dec. 212; Thompson v. Ketcham, 8 Johnson 190, S. C. 5 Am. Dec. 332; Pearl v. Hansborough, 9 Humph. 426. The Alabama statute (Section 2731, Code of 1876,) was simply an enabling provision by which a married woman, in compliance with its provisions, could be made a *feme sole* as to her separate statutory estate in that State to the extent authorized by the statute. The chancellor in ascertaining that she was entitled to the excepional and enabling benefits of the statute did not exercise any general powers belonging to a court of chancery but was limited in his powers to the grant of the statute. The effect of his finding under the statute was simply to invest the married woman in that jurisdiction with the exceptional status under the general laws of the State, of dealing with separate estate which she possessed as a *fème sole* to the extent provided and no further. We have no question before us as to the validity of any contract made or act done by the marrired woman under such status in Alabama and our judgment is that Mrs. Walling can not avail herself of the decree under the Alabama statute as to acquisition of property and transactions in this State after she became a citizen here. There are decisions on questions so analogous to the one we are considering as to make them apparently conflict with the conclusion we reach. We refer to the decisions holding that an illigitimate child, made legitimate by the subsequent marriage of its parents according to the laws of the country of the marriage and parental domicile, is thereafter legitimate elsewhere. Miller v. Miller, 91 N. Y. 315, S. C. 43 Am. Rep. 669, and the legal adoption of a child with capacity to inherit in one jurisdiction can likewise inherit in another jurisdic-

tion where similar laws authorizing the adoption of children prevail. Ross v. Ross, 129 Mass. 243, S. C. 37 Am. Rep. 321. But there is a distinction to be observed in dealing with the questions; it is pointed out in the case last cited. It is there said: "the capacity or qualification to inherit or succeed to property, which is an incident of the status or condition, requiring no action to give it effect, is to be distinguished from the capacity or competency to enter into contracts that confer rights upon others. A capacity to take and have differs from a capacity to do and contract; in short, a capacity of holding from a capacity to act. Generally speaking, the validity of a personal contract, even as regards the capacity of the person to make it, as in the case of a married woman or an infant, is to be determined by the law of the State in which it is made."

We have considered the question as presented by counsel, but another view has suggested itself which we mention without a determination of it. The organic law provides that a married woman's separate real and personal property may be charged in equity and sold, or the uses, rents and profits thereof sequestered for certain designated purposes. Article 11, Section 2, Constitution 1885; Halle v. Einstein, 34 Fla. 589, 16 South. Rep. 554. Does the making a married woman a free dealer, even in this jurisdiction, oust the court of chancery of the jurisdiction conferred by the constitution?

The bill clearly authorized the chancellor to grant the temporary injunction, and as there was nothing at the time before the court to overcome it but the plea, which we decide presented no defense, there was no error in the orders granting the injunction and overruling the plea.

The remaining question presented relates to the rul-

ing of the court denying the motion to dissolve the injunction. The answer of defendants had then been filed, and it is claimed that all the equities of the bill were met. From the conclusion already reached, it follows that all that part of the answer and defense relating to the status of a free dealer claimed for Mrs. Walling under the Alabama decree must be entirely disregarded. Mrs. Walling was a *feme covert* in this State engaged in a mercantile business at the time she bought goods from appellees and when the bill was filed against her. It is charged that the husband did not join his wife, R. A. Walling, in the execution of the bills of sale and deed, and the answer admits that they were executed as alleged. Copies were attached to the bill as parts thereof, and from these it appears that Mrs. Walling, designating herself as a free dealer, alone executed them. One bill of sale was executed to H. H. Ratliff & Co., for the entire stock of merchandise, and there is nothing connected with it showing the concurrence of the husband in the sale. In this State the husband and wife must join in all sales, transfers and conveyances of the property of the wife. Rev. Stats. §2072. In reference to personal property the statute should be liberally construed in giving effect to the transfers of the wife. Tunno v. Robert, 16 Fla. 738; Ballard v. Lippman Bros., 32 Fla. 481, 14 South. Rep. 154. The case is not here upon final hearing and it is not necessary to determine the validity of the sale to Ratliff & Co., on account of the non-joinder of the husband therein, though upon the pleadings it appears the statute has not been complied with. It is stated in the answer that Ratliff bought the entire stock of goods from Mrs. Walling, and paid her cash one hundred and sixty dollars more than she owed him. She was at the time embarrassed with debts and

threatened with suits by her creditors.    We have con-
densed the answer in the statement given, but taken as
an entirety, it is apparent that Ratliff knew when he
purchased the stock of goods that Mrs. Walling was
insolvent and that she was then disposing of all her
property in order that it might not be reached by press-
ing creditors.    Under such circumstances he should
not have bought more than was necessary for his own
protection.    Christian v. Greenwood, 23 Ark. 258, S. C.
79, Am. Dec. 104; Meyberg v. Jacobs, 40 Mo. App.
128; Montgomery, Dryer & Co. v. Bayliss, 96 Ala. 342,
11 South. Rep. 198; Oppenheimer v. Guckenheimer, 39
Fla. 617, 23 South. Rep. 9.

Under our statute a married woman can sell her real
property provided her husband join in the sale and con-
veyance, but in order to render such sale and conveyance
effectual to pass title, she must acknowledge before
some officer authorized to take acknowledgments of
deeds, separately and apart from her husband, that she
executed the same freely and voluntarily and without
compulsion, constraint, apprehension or fear of or from
her husband, and the officer's certificate must set forth
all such facts. Sections 1956 and 1958, Revised Statutes.
Mrs. Walling attempted to deed her property direct to
her husband, claiming to act as a free dealer when she
was invested with no such capacity, and her deed was
not acknowledged as required by statute to make the
deed effective.    If it be conceded that she could deed
property direct to her husband, which we do not decide,
still her deed is ineffective because not acknowledged
as imperatively required by the statute.    Carn v. Hais-
ley, 22 Fla. 317.

Without considering the sufficiency of the answer
in other respects to overcome the case made in the bill,

we think the court did not err in refusing to dissolve the injunction.

Upon consideration of the questions presented we are of the opinion that the orders made were correct, and affirm the action of the court. Ordered accordingly.