*W. E. Niblack, N. F. Malotte* and *Thomas R. Cobb,* for the appellants.

*John Baker,* for the appellee.

---

## Maple *v.* Burnside *et al.*

ATTACHMENT—PRACTICE.—Where an issue is formed on an affidavit for attachment, it should be tried by the Court, or jury, with the issues in the cause in which the attachment is issued.

SAME—WAIVER.—But if the issue in the cause is first tried, and there is no objection interposed by the defendant, to the subsequent trial of the issue on the affidavit for attachment, he will be deemed to have waived the right which he had to insist upon a trial of the whole controversy at once.

FRAUDULENT INTENT—MORTGAGE.—Whether a mortgage is given with a fraudulent intent is, under the statute, § 21, 1 G. & H. p. 353, a question of fact for the jury to determine.

APPEAL from the *Fayette* Circuit Court.

HANNA, J.—The appellees sued the appellant on a note.

At the same time they caused a writ of attachment to issue against the property of the then defendant, which was returned served, &c. The defendant appeared and by separate paragraphs of his answer put in issue the allegations in the complaint and those in the affidavit for the order of attachment. It appears from the record that the Court tried the "cause of action on the note," and rendered a judgment for the plaintiff; and as to the "attachment suit and proceedings herein," a jury trial was had, but no verdict rendered. The case was continued from term to term, the record states, until upon a jury trial there was a verdict and judgment for the plaintiff.

The latter branch of the case is attempted to be brought here, and errors are assigned affecting the correctness of the verdict in view of the evidence, and of the instructions given to the jury. In *Foster* v. *Dryfus*, 16 Ind. 158, it was stated that, "where an issue is formed on the affidavit, it should be tried by the Court or jury, with the issues in the cause in which the attachment issued." To the same effect is the case of *Bradley* v. *The Bank, &c.*, 20 Ind. 531, and in which it was further held that, "the issues on the attachment were properly made up for trial, at the time of the trial of the merits of the cause of action, and hence we must hold that they were then tried." Preliminary to an examination of the points presented we must determine whether the appellant is, under these decisions, in a position to avail himself of any errors that may have been committed in the progress of this second trial, even if such had occurred.

We are of opinion that he is. The record clearly shows that the trial before the Court was "on the note." Whether, if the defendant had interposed any objection, a further trial "as to the attachment" could have been had, we need not determine, as no such objection was made. Indeed, so far as the record shows, the separate trials thus had appear to have

been with the consent of said defendant. By his acts, in that behalf, he waived the right which we suppose he had to insist upon the trial of the whole controversy at once. It may be possible, but upon this point we decide nothing, that the failure of plaintiff to place upon trial all the issues, as well upon the attachment proceedings as upon the main action, in the first instance, would have resulted in a defeat of any attempt by him to place a part of those issues upon trial in a second or further trial, if the defendant had insisted upon his rights, and had not by his acts consented to that mode of disposing of said issues.

The following charges were given by the Court, at the request of the plaintiffs:

1. The only point or issue in this case is whether or not *Maple*, before the issuing of the attachment, had sold, conveyed or otherwise disposed of any of his property, or suffered it to be done, with the intent to cheat, hinder or delay any of his creditors; if he had, you must find for the plaintiffs.

2. It makes no difference in this case what the intention or object of *Fletcher* and *Cullum* was in taking the mortgage—even if it was honest—and *Maple* had the fraudulent intent above named, you must find for the plaintiffs.

The real question was between the attachment creditors and these mortgagees, if it had been so shaped in the pleadings as to present that question for trial. But the pleadings upon the part of the defendant were, as to the main action, a denial, payment and set-of; and as to the auxiliary proceedings, a denial of the causes alleged in the affidavit for an attachment, which were that said *Maple* had "sold, conveyed and disposed of his property subject to execution with the fraudulent intent to cheat, hinder and delay his creditors." Under this the evidence was introduced in reference to the mortgage to *Fletcher* and *Cullum*. They do not come in, nor

set up any claim to the property under the mortgage, in any form in this suit. It appears to us the question was, whether the attachment properly issued under that affidavit. We think it did. If property, other than that which was thus mortgaged, had been seized by the attachment, of course such mortgagees would have had no interest therein, and we suppose that upon the trial the plaintiff might have shown that the defendant had made the said mortgage with the intent to hinder, &c., so as to thus establish the allegation in the affidavit and enable the plaintiffs to hold the property seized to satisfy their judgment. But in the case at bar, it so happened that the property mortgaged was that seized by virtue of the attachment. As between the attachment creditors and debtor, we suppose, the principle is the same in this as the former instance, and the plaintiff would recover. Whether the position of the mortgagees was such as to have enabled them to successfully interpose a claim to the property is quite another question. They did not so interpose nor were they made parties, and therefore could not be concluded by the determination in the case at bar, unless it should be by some mere question of laches, which would not at all affect the point now being considered.

The third charge was as follows:

"3. If after the mortgage was given, the defendant remained in possession of the property mortgaged, after the time named in it, using and trading with the property as the owner, it is a fraud and you must find for the plaintiffs."

It appears to us this instruction was calculated to confuse and mislead the jury to the prejudice of the defendant. They were told that, if he remained in possession after the mortgage was given and after the time named in it, &c. If it was intended to say that the defendant could not hold possession after the date of the mortgage, it is certainly erroneous. If some other point of time was intended to be indi-

cated at which the possession of the defendant should cease to be rightful, it should have been more specific, especially in view of the fact that the date when the debts secured by the mortgage were to become due is not stated particularly; and the right to retain said possession was to remain in the mortgagor until the maturity and failure to pay said debts. The question of the rights of the mortgagor in said property, whilst thus in his possession, is discussed at length. We shall not follow learned counsel in that discussion, having come to the conclusion, in view of the evidence, that the instruction was calculated to mislead the jury, not only in confusing them as to the time at which the right of possession, &c., ceased in the defendant, but also as to whether they were, by the statement of the Court, concluded in considering whether the facts stated by the Court, if found by them, established fraud in the defendant. The statute is that fraud is a question of fact for the jury. The most natural construction of this charge would be that if the jury should find that the facts existed alluded to therein, then, whether they constituted fraud or not, was not for the jury to determine, but was for the Court, and established fraud.

*Per Curiam.*—The judgment below is reversed, with costs. Cause remanded.

*B. F. Claypool* and *J. M. Wilson,* for the appellant.

*Geo. Holland* and *James C. McIntosh,* for the appellees.