## W. Taylor Rice *vs.* Eben N. Perry.

*Fraudulent sale.   Testimony—admissibility of.*

The defendant, seeking to avoid a sale as fraudulent, relied upon a series of occurrences happening before and after the sale to prove the fraud, and the judge instructed the jury that "it was primarily important to consider the state of facts existing with the knowledge of the plaintiff, on the 16th day of June, when he made the purchase," and separately called the attention of the jury to subsequent occurrences; it was *held,* that exceptions would not lie to this method of presenting the case unless the defendant had requested more specific instructions.

To avoid a sale there must have been an accomplished purpose by means of it, to defraud, hinder, or delay the creditors of the vendor.  The fraudulent intent alone is not sufficient.

The defendant called one of the vendors to a sale which he sought to avoid as fraudulent, and argued in support of his position upon the inherent falsity and improbability of the testimony given by this vendor.   The judge repeatedly invited attention to the fact that this witness had been called by the defense; that his statement disproved the alleged insolvency of his firm at the time of sale, saying as to their solvency, "the defendant has proved it if you believe his witness;" and by other similar expressions several times presented the idea that the testimony must be taken more strongly against the defendant because given by his witness; this was held no ground for exception.

One of plaintiff's witnesses testified that the plaintiff and one Marshal O. Warren, unloaded, on its arrival at the depot, the superphosphate, for the value of which plaintiff brings this suit as sole owner, and that all arrangements in regard to unloading it had been made with plaintiff and Warren, and witnesses for the defense testified that Warren had requested them to unload it or to procure some one to do so, and in answer to an inquiry made in the presence of the plaintiff as to "how he (W.) came to buy that phosphate at that season of the year," Warren had answered that he had "bought it at a bargain;" *held,* that this testimony did not sufficiently connect Warren with the plaintiff in the ownership of the phosphate to render testimony as to Warren's declarations in regard to its purchase admissible.

ON EXCEPTIONS AND MOTION FOR NEW TRIAL.

This was an action of trespass against the sheriff of Cumberland county for the alleged misfeasance of his deputy in attaching twenty tons of superphosphate as the property of the firm of Whitehouse & Goodwin, July 22, 1869, on a writ in favor of Wattson and

Clark, sued out upon an indebtedness of $5,833.00, of which $5,200.00 were due upon a note given to Wattson & Clark, which matured upon the 18th day of June, 1869.

Plaintiff claimed the property attached by virtue of a purchase made by him on the 14th day of June, 1869, under which he took possession on the 16th of the same month.

Defendant contended that this sale was void, and introduced testimony as to occurrences prior to, upon and after the 16th of June, tending to show an intent on the part of the plaintiff and Whitehouse & Goodwin to defraud their creditors, Wattson & Clark, in making this conveyance, and introduced other testimony tending to show that Whitehouse & Goodwin were insolvent, having dispossessed themselves of all attachable property before June 18, 1869.

Samuel R. Whitehouse, of the firm of Whitehouse & Goodwin, called as a witness by the defendants, testified among other things, that on the day when Wattson & Clark's note fell due he came to Saco to pay it, and while passing from the stable to the bank his pocket-book, containing $5,200.00 in bills, was lost from his pocket. The defendant's counsel argued that this testimony was improbable and false as shown by other facts, and from the story itself as *told* by witness.

One of the plaintiff's witnesses testified among other things, that he was station agent at Gorham where the phosphate attached was sent; that the plaintiff and one Marshal O. Warren unloaded it, and that all the arrangements were made with Rice and Warren, who were both there together.

A witness for the defense testified that he saw Rice and Warren at Gorham when the first load of superphosphate came; that Warren requested him to unload it and on his refusal asked him to get a man to do it, and that in answer to witness' inquiry "how he came to buy that phosphate at that season of the year," Warren replied that he bought it at a bargain, Rice being present at this conversation. Substantially the same facts were testified to by other witnesses, whereupon the defendant called Freeman Pugsley

and interrogated him in regard to a conversation with Marshal O. Warren in relation to purchasing these twenty tons of superphosphate, but the testimony was excluded by the court, subject to the defendant's exceptions.

The presiding justice among other things, charged as follows:— " It is primarily important that you consider the state of the facts existing with the knowledge of the plaintiff on the 16th day of June, when he made the purchase." . . . And in regard to the perpetration of a fraud upon Wattson & Clark, he said: " If he [plaintiff] with a knowledge that their [Whitehouse & Goodwin's] purpose was, in this sale, to defraud, hinder, or delay their creditors, negotiated the sale, knowing that to be their purpose, and if such was the effect of the transfer, then he too would be legally guilty of fraud, and the sale would be void." . . . As to the insolvency of Whitehouse & Goodwin when they made the alleged sale, he said: " Your attention has been called to other testimony, which has been introduced by the defendant, which it is said very much conflicts with this theory of insolvency of Messrs. Whitehouse & Goodwin at that time, and of their purpose of defrauding their creditors by this sale. It is testimony coming from Mr. Whitehouse himself that he had the $5,200 in his pocket-book and lost it. The defendant has proved it [the firm's solvency] if you believe his witness." . . . " Well, now, was that [the loss of the pocket-book] a misfortune? Why, if it was, gentlemen, if it was a misfortune, as would seem by the testimony of this Mr. Whitehouse, if you believe him, he is introduced by these defendants, if it was a misfortune, then can it be said on the 16th day of June, when this plaintiff purchased this phosphate, that these men, who had collected this money for this purpose, intended to perpetrate fraud upon their creditors by selling this phosphate to him to enable them to raise money to pay this very debt; this testimony, gentlemen, has been introduced by the defense and it is for you to consider it. The argument is, I believe, that this was all false, all got up, and superadds to the fraudulent and corrupt purpose of Goodwin & Whitehouse, the perjury of Whitehouse himself."

The verdict was for the plaintiff for $1,248.50 and the defendant

excepted and filed a motion for a new trial. A former verdict for the plaintiff had been set aside as against the evidence.

The defendant contended in support of his exceptions:

I. That the presiding justice in his charge directed the attention of the jury to what transpired before and on June 16th, disconnected from subsequent occurrences, whereas they all constituted one transaction—all tended to accomplish the single purpose of defrauding Wattson & Clark. Fraud is a conclusion deduced not merely from events but from their relation to each other. To separate and segregate them is to deprive them of their legitimate effect. *Castle* v. *Bullard*, 23 How. 187; *Blake* v. *White*, 13 N. H. 270; *Story* v. *N. & W. R. R.*, 24 Conn. 94; The Short Staple, 1 Gall. 106; *La Negreda*, 8 Wheat. 173.

II. The instruction that to avoid the sale it must not only be designed to defraud Wattson & Clark, but that " such" must be " the effect of the transfer," was erroneous.

Fraud consists in the intent. *Moss* v. *Riddle*, 5 Cranch. 351. If the purpose be to cheat, it is immaterial whether it be fully accomplished or not. *True* v. *Congdon*, 44 N. H. 55.

III. Undue stress was laid upon the fact that defendant called Whitehouse as a witness, as the jury were thereby led to believe that he was estopped to argue the improbability of Whitehouse's story; the rule being simply that a party cannot prove the general bad character of his witness. 1 Phil. on Ev. (5th Am. ed.) 309. But may contradict him as to particular facts. *Brown* v. *Bellows*, 4 Pick. 194; *Melluish* v. *Collier*, 15 Ad. & El. N. S. 878, in 69 Eng. Com. L. R.

IV. The testimony of Freeman Pugsley offered by defendant should have been admitted, as Warren participated in the common design to defraud the creditors of Whitehouse & Goodwin, claimed title to the property, exercised rights of ownership over it, and actually took possession of it, as shown by the testimony.

*Ayer & Clifford, S. K. and B. F. Hamilton*, for the plaintiff.

*Ira T. Drew, John A. Waterman, Edwin B. Smith*, for the defendant.

DICKERSON, J. Trespass against the defendant, as a sheriff, for the alleged misfeasance of one of his deputies in attaching twenty tons of superphosphate, the property of the plaintiff, as the property of Messrs. Whitehouse & Goodwin, on a writ in favor of their creditors, Messrs. Wattson & Clark.

The plaintiff claims to have purchased the property attached of Whitehouse & Goodwin on the 14th day of June, A. D. 1869, and to have taken possession of it on the 16th day of the same month; and the principal question raised at the trial was, whether the property at the time of the taking, July 22, 1869, was the property of the plaintiff, or of Whitehouse & Goodwin.

The verdict was for the plaintiff, and the defendant filed exceptions, and also a motion to have the verdict set aside as against evidence and the weight of evidence.

The exceptions relied upon in the argument are:

1. That the judge in his charge directed the attention of the jury to what transpired before and on the day the plaintiff received a bill of sale of the property, as disconnected with the subsequent evidence; whereas, it is claimed that both of these parts of the evidence constituted one transaction, and shew the purpose to defraud the creditors of the plaintiff's vendors.

In summing up the evidence the judge naturally and properly proceeded in chronological order. This necessarily required him to refer to the evidence of what transpired prior to, and at the sale, before he commented upon the evidence of what subsequently occurred. We do not perceive that either in the statement or analysis of the evidence he denied to every part of it the force and effect it was properly entitled to. On the contrary, so far from being open to the objection raised, the charge specially calls the attention of the jury to the evidence of the transactions subsequent to the sale, with a view to interpret the motives and conduct of the parties prior to that time. If the defendant desired more specific instructions upon this point he should have requested the judge to give them.

2. The instruction of the judge that in order to avoid the sale,

there must have been an accomplished purpose by means of the sale to defraud, hinder, or delay the creditors of the vendor, is excepted to and relied upon in the argument. This objection is placed upon the ground that fraud consists in the intent, and that if it is the purpose of the parties to the sale to defraud the creditors of the vendor, the sale will be void whether that purpose be accomplished or not. We do not entertain this view of the law. The only ground upon which the creditors in this case can impeach the validity of the sale is that they were thereby defrauded, hindered, or delayed in the collection of their debt. If they were not thus defrauded, hindered, or delayed, they were not damaged by the sale, and if not damaged they could not interpose any legal objection to the validity of the sale. A fraudulent purpose is an important element in the case, but it is not the only one; there must be superadded to it in addition to the sale, actual fraud, hindrance, or delay resulting therefrom to the creditors. The sale will be upheld unless the fraudulent purpose is actually accomplished. Thus, if, notwithstanding the sale, Whitehouse & Goodwin retained and held at the time of the attachment on the original writ other personal property sufficient to pay the debt of Wattson & Clark, and equally open, known, and accessible to them with that sold, the sale would not be void, whatever may have been the secret purpose of the parties to it. The reason for considering the sale void in this class of cases is that creditors are damaged thereby; and when the reason is wanting the rule itself becomes inapplicable. The instructions of the judge upon this branch of the case contained an accurate statement of the law, and afford no ground for objection.

3. The third alleged error commented upon by the counsel is that the judge in his charge attached undue importance to the fact that the defendant called Whitehouse as a witness. It is the right and often becomes the duty of the judge to state, analyze, compare, and comment upon the evidence, and to suggest to the jury the tests for determining the credibility of the witnesses and the weight of the evidence. One of the choicest fruits of judicial experience is

the insight which it gives a judge into human motives and character, and the skill he thus acquires in detecting falsehood and eliciting the truth, oftentimes from a seemingly crude, inconsistent, and unintelligible mass of evidence. The rights and interests of the parties, and the administration of justice, especially in cases of alleged fraud, not unfrequently invoke the judge to give the jury the benefit of his judicial experience in this respect. To deny this right to the judge is at the same time to deny, also, to the jury one of the most efficient instrumentalities for discovering the truth. The witness Whitehouse was a member of the firm of Whitehouse & Goodwin. He testified, upon direct examination, that he accidentally lost the pocket-book containing the money the firm had provided, before and after and by means of the sale to the plaintiff, to pay the debt of the creditors who contest the validity of that sale. It is obvious that if this testimony is true, it is a conclusive answer to the defendant's charge of fraud ; and it is further obvious that the defendant elicited this testimony as false testimony, and for the purpose of inducing the jury to find fraud, not only against the testimony, but from the perjury of his own witness. In other words, the defendant sought to establish a material point in his defense through the infamy of his own witness. The charge shows that the defendant's counsel treated Whitehouse's testimony as perjured testimony, and that he sought to do indirectly what he could not do directly, to establish the infamy of his own witness from the inherent falsity of his testimony, when the law would not permit him to do it by introducing evidence of his general bad reputation for truth.

This is not a case where a party is surprised at the testimony of his own witness, nor where he is compelled *ex necessitate rei* to introduce a particular witness, or go out of court. It was entirely optional with the defendant whether he would call Whitehouse as a witness or not, and he introduced him because he was expected to testify as he did upon the subject to which that part of the charge complained of relates. Has a party who ventures upon such an experiment legal cause to complain that the judge called

such witness his witness ? We think not. It was certainly proper for the judge to remind the jury that Whitehouse was called by the defendant, and to suggest to them, as he did interrogatively, that if the loss of the pocket-book was a misfortune, as would seem by the testimony of Whitehouse if they should believe him, and Whitehouse & Goodwin sold the superphosphate to the plaintiff, and collected the money lost with the pocket-book (as Whitehouse testified) to pay their note to Wattson & Clark, whether it could be said that Whitehouse & Goodwin intended to commit a fraud upon their creditors by the sale to the plaintiff? This instruction was simply an intimation to the jury, that if they believed the testimony of Whitehouse there was no fraud in the sale, a conclusion to which every intelligent juror must have arrived without any intimation from the judge. The judge nowhere intimated an opinion that the testimony of Whitehouse was to be believed, but specially called the attention of the jury to the argument of the defendant's counsel charging that it was false, corrupt, and perjured. The relation of Whitehouse to the parties was so obvious that the jury could not fail to consider it, and if counsel desired that their attention should be more particularly directed to it, they should have signified their wishes to the court. We see nothing objectionable in this part of the charge.

4. The judge properly excluded the testimony of Freeman Pugsley in relation to the alleged declarations of Marshall O. Warren. Warren was not a party or a witness. The testimony offered was clearly *inter alios*, and not admissible in any view of the case.

The other exceptions taken at the trial are not relied upon in the argument, and afford no ground for disturbing the verdict.

### THE MOTION.

This case has been twice submitted to a jury by able counsel on both sides, with the same result. It is a case of alleged fraud, and the evidence is conflicting. The verdict cannot be set aside as against evidence; and the court will not set a verdict aside as

against the weight of evidence unless it is manifestly so. We do not find this to be so. Nor do we think there is cause to set aside the verdict on the ground that the jury mistook or disregarded the evidence, or were influenced in their verdict by any bias, prejudice, or other improper motive.

*Exceptions and motion overruled.*

APPLETON, C. J.; CUTTING, WALTON, BARROWS, and DANFORTH, JJ., concurred.