Filed May 10, 1888.

———

No. 13,158.

## CHAMBERLIN *v.* JONES ET AL.

**SALE.**—*Debtor and Creditor.*—*Fraudulent Transfer of Chattels.*—*Trust.*—One who, by collusion with an insolvent debtor, accepts a transfer of chattels belonging to the latter, and, with intent to place the property beyond the reach of the transferrer's creditors, converts and sells it, takes no title as against such creditors, and may be compelled, in equity, to account to them, as trustee, for the value of the property so taken.

**SAME.**—*Misjoinder of Causes of Action.*—A complaint seeking judgment

against the debtor upon notes executed by him, and also seeking to compel the fraudulent transferee to account for the value of the property converted by him, does not show a misjoinder of causes of action.

From the Fountain Circuit Court.

*R. P. Davidson* and *J. C. Davidson*, for appellant.

*L. Nebeker, H. H. Dochterman, N. Morris* and *L. Newberger,* for appellees.

MITCHELL, C. J.—The complaint in this case is encumbered with useless extraneous matter, to such an extent as to render obscure and uncertain the real theory upon which it proceeds. Eliminating immaterial averments and unnecessary verbiage, the following appear to be the material facts: In July, 1884, Parrott & Co. were partners trading as merchants, and the owners of a stock of goods worth $1,500. They were indebted to Jones, McKee & Co., for goods sold and delivered, to the amount of $458.76. The debt was evidenced by four promissory notes. Intending to cheat and defraud their creditors, and to prevent the plaintiffs from collecting their debt, the first named partners caused a bill of sale to be made, by which they assumed to transfer their entire stock to the defendant Chamberlin for the nominal consideration of $650, the receipt of which they acknowledged in the written sale bill. It is charged that Chamberlin, participating in their fraudulent purpose, received the bill of sale and took possession of the stock, with the intent to place the goods beyond the reach of legal process, and that he neither paid nor agreed to pay anything for the stock, except that he agreed to account to Parrott & Co. for the surplus over $650. What was to be done with the $650 does not appear from the complaint. It is further charged that Chamberlin, with the co-operation of the other defendants, transferred the goods from the town of Melott, in Fountain county, the place where Parrott & Co. had previously carried on business, to the city of Lafayette; and that he concealed and mixed them with his own goods, so that their identity

was lost; and that he realized from the sale of the goods so taken and concealed $500, for which he had never accounted. It is averred that Parrott & Co. were wholly and notoriously insolvent at the time the suit was commenced, both as a firm and as individuals, and that they had no other property subject to execution at the time they transferred their stock, in the manner above mentioned, to Chamberlin. The plaintiffs, Jones, McKee & Co., prayed judgment against Parrott & Co. for the amount of the notes, interest and attorneys' fees, and that Chamberlin be declared a trustee, as to the proceeds of the property converted by him, and that he be required to account and bring the money into court.

Upon issues duly made, there was a finding and judgment against all the defendants below.

Chamberlin prosecutes this appeal. The argument on his behalf is predicated on the proposition that the facts stated in the complaint are not sufficient to constitute a cause of action against him; or, if they are, that they do not show a common liability with the other defendants, and hence, it is said, the demurrer should have been sustained for want of sufficient facts, or because several dissimilar causes of action were improperly united in one complaint.

In the absence of a lien upon the property, the action is, of course, not maintainable as a suit at law for damages growing out of the alleged fraudulent acceptance and disposition of the goods, which, but for the interference of the appellant, might have been subjected to the payment of the amount due the plaintiffs from Parrott & Co.; nor can it be maintained upon the theory that Chamberlin was indebted to Parrott & Co., and, therefore, bound to respond as upon some express or implied promise to their creditors. This is settled by the case of *Tasker* v. *Moss*, 82 Ind. 62; Bump Fraud. Conv. p. 575.

The gravamen of the complaint against Chamberlin in the present case is, that he entered into a conspiracy with Parrott & Co. to assist them in defrauding their cred-

itors, and that in pursuance thereof he took their goods under cover so as to screen them from legal process; that he converted the goods into money for the purpose of enabling his co-defendants to enjoy the surplus over $650, and that after consummating the scheme he had five hundred dollars in money, unaccounted for, in his hands, part of the proceeds of the goods sold and converted.

The equitable jurisdiction of the court was invoked to declare that he took the goods under such circumstances as to become the trustee of Parrott & Co.'s creditors, and to compel him to account accordingly.

In cases like the present, courts of equity intervene because the law is inadequate to afford a remedy, chancery courts being unwilling, as has been said, to set bounds to their jurisdiction, whenever their aid is properly invoked to detect fraud and prevent the failure of justice. *Hadden* v. *Spader*, 20 Johns. 553; *Weed* v. *Pierce*, 9 Cow. 722.

Where specific property, which the creditor might have subjected to the payment of his claim, has been transferred by a debtor for the purpose of delaying and defrauding his creditors, the person accepting the transfer, with knowledge of and participating in the fraud, takes no title as against creditors. All such transfers and assignments are void upon general common law principles, as well as within the very terms of the statute. *Seymour* v. *Wilson*, 19 N. Y. 417.

The transfer being void, the transferee necessarily takes no title as against the transferrer's creditors, but as to them, as was ruled in *Jones* v. *Reeder*, 22 Ind. 111, he holds the property in trust, and, like any other trustee, he is liable to be called to account in a court of equity. *Blair* v. *Smith, ante,* p. 114.

If he conceals the property, or converts it into money, or otherwise puts it beyond the reach of legal process, he is guilty of a breach of duty, and a court of equity will compel him to account according to the justice of the case.

Thus, in *Mason* v. *Pierron*, 69 Wis. 585, a fraudulent

grantee of real estate mortgaged the land to a good-faith mortgagee and received $2,500 in money. The Supreme Court of Wisconsin held, without regard to the use made of the money raised by the mortgage, that, so long as it was not used for the benefit of the creditors of the fraudulent grantor, the grantee must account. A personal judgment for the amount was rendered accordingly. *Ferguson* v. *Hillman*, 55 Wis. 181; *Fullerton* v. *Viall*, 42 How. Pr. 294; *Union Nat'l Bank* v. *Warner*, 12 Hun, 306. To the same effect, see *Jones* v. *Reeder*, 22 Ind. 111; *Robinson* v. *Holt*, 39 N. H. 557 (75 Am. Dec. 233); *Christian* v. *Greenwood*, 23 Ark. 258 (79 Am. Dec. 104).

So, in *Reeg* v. *Burnham*, 55 Mich. 39, it was held, that if one receives the goods of another, and disposes of them, knowing at the time that the owner is fraudulently intending to place them beyond the reach of his creditors, the former is liable in equity to the creditors of the latter, to the amount of the goods transferred.

In like manner it has been held that an insolvent debtor's fraudulent grantee, who sells property to a *bona fide* purchaser, is liable to the creditors of his grantor for the value of property so received and sold, less valid liens existing thereon at the time he acquired it. *Smith* v. *Sands*, 17 Neb. 498; *Farlin* v. *Sook*, 30 Kans. 401; *Murtha* v. *Curley*, 90 N. Y. 372; Wait Fraud. Conv., sections 177, 178; *Halbert* v. *Grant*, 4 Mon. 581.

Equity gives relief to creditors by setting aside fraudulent transfers of property when the property can be reached by process; but when the specified property has been placed in a situation, by one participating in the fraud, so that it can not be recovered, a decree for its value may be rendered. *Solinsky* v. *Lincoln Savings Bank*, 85 Tenn. 369.

Of course, a creditor may honestly obtain payment of, or security for, a *bona fide* debt from an insolvent debtor, and if property is purchased in good faith, even though the whole, or a substantial part, of the consideration is a past debt, if

Chamberlin *v.* Jones *et al.*

the transaction is free from fraud the prior purchaser will be protected to the extent of his actual equity, in preference to mere general creditors. *Gilbert* v. *McCorkle,* 110 Ind. 215. Or, if possession has been taken of goods under an agreement that the proceeds should be applied in good faith to the payment of the owner's debts, to the extent that such an application has been made, the person so receiving them will be protected. *Dessar* v. *Field,* 99 Ind. 548.

Recurring to the facts in the present case, whatever else may be said, it is quite apparent that the appellant had no equity in the $500, derived from the sale of goods, which remained in his hands unaccounted for at the time the suit was commenced.

As a general rule, equity will not interfere to aid a creditor until he has exhausted all his remedies at law; but when the creditor shows that his debtor has no property subject to execution, or that it has been fraudulently converted, or placed beyond the reach of legal process, and that he has no available remedy at law, a court of equity will not require the observance of mere useless formalities.

As we have seen, divesting the complaint of all extraneous matter, it appears that the plaintiffs sought to obtain a judgment against Parrott & Co. for the amount of the notes described in the complaint, and to compel the appellant to account for the value of certain goods which it is alleged he took under circumstances which made him a trustee for the creditors of Parrott & Co.

The conclusions above stated show that there was no error in overruling the demurrer to the complaint.

Judgment affirmed, with costs.

ELLIOTT, J., took no part in the decision of this case.

Filed March 24, 1888; petition for a rehearing overruled July 10, 1888.