No. 13,189.

## PHELPS ET AL. *v.* SMITH ET AL.

FRAUDULENT CONVEYANCE.—*Husband and Wife.*—A husband may cause land to be conveyed to himself and his wife, thus vesting in them a joint tenancy with all its legal incidents, and such conveyance is only impeachable at the suit of creditors on the ground of fraud.

SAME.—*Tenants by Entireties.*—Where the husband has property subject to execution more than sufficient to pay his debts, he is not guilty of fraud merely because he procures land owned by him to be conveyed to himself and wife as tenants by entireties.

SAME.—*Special Finding.*—*Fraud a Question of Fact.*—Where a cause of action depends upon the establishment of fraud, the special finding made in the case must state that there was fraud. Fraud is a question of fact, and can not be presumed, or inferred as a matter of law.

SAME.—*Conveyance to Put Property Beyond Reach of Creditors.*—A statement in the special finding that the purpose of the parties in having the husband's property, the value of which is not given, conveyed to himself and wife as tenants by entireties, was to place the property beyond the reach of creditors, is not in itself a finding of the fact of fraud.

SAME.—*When Conveyance not Fraudulent as to Creditors.*—A voluntary conveyance can not be adjudged fraudulent at the suit of creditors, where there is no actual fraud, if, at the time the conveyance was made or the suit was brought, the grantor had property subject to execution sufficient to pay his debts.

SAME.—*Partnership.*—*Dissolution.*—*Husband and Wife.*—Where a partner, being indebted to his wife, executes to her a promissory note, she may, upon the subsequent dissolution of the firm and division of the partnership property, subject his property to sale in satisfaction of a judgment obtained on the note, and she is entitled to the proceeds as against partnership creditors having no specific lien.

SAME.—*Action to Set Conveyance Aside.*—*Right to Maintain.*—It is the law of this State that a creditor, although he has not taken judgment, may successfully assail a fraudulent conveyance.

CONSPIRACY.—*To Defraud Creditors.*—*Sale.*—*Accounting May be Enforced.*—A person who enters into a conspiracy to defraud the creditors of a co-conspirator, and who, pursuant to the purpose of the conspiracy, obtains a judgment and secures a sale under an execution thereon of property which of right should have gone to the creditors of the co-conspirator, may be compelled to account for the proceeds of the sale.

From the Montgomery Circuit Court.

| 116 | 387 |
| 117 | 391 |
| 119 | 52 |
| 119 | 290 |
| 121 | 281 |
| 121 | 304 |
| 122 | 264 |
| 116 | 387 |
| 124 | 169 |
| 126 | 57 |
| 127 | 270 |
| 116 | 387 |
| 129 | 585 |
| 116 | 387 |
| 130 | 482 |
| 116 | 387 |
| 131 | 470 |
| 132 | 53 |
| 132 | 58 |
| 133 | 282 |
| 133 | 372 |
| 116 | 387 |
| 136 | 322 |
| 116 | 387 |
| 137 | 285 |
| 139 | 30 |
| 139 | 609 |
| 139 | 700 |
| 116 | 387 |
| 140 | 589 |
| 143 | 557 |
| 116 | 387 |
| 145 | 603 |
| 116 | 387 |
| 154 | 85 |
| 154 | 89 |
| 116 | 387 |
| 157 | 15 |
| 157 | 18 |
| 116 | 387 |
| 164 | 348 |

E. C. *Snyder,* R. J. *Greener,* P. S. *Kennedy,* S. C. *Kennedy,* T. H. *Ristine* and H. H. *Ristine,* for appellants.

G. W. *Paul,* J. E. *Humphries* and W. W. *Thornton,* for appellees.

ELLIOTT, J.—Stated in an abridged form, the facts set forth in the special finding are these: From the 29th day of March, 1883, until the 9th day of June, 1884, John B. Smith and Thomas B. Collins were partners doing business at Anderson and at Crawfordsville, in this State. On the 30th day of January and the 8th day of May, 1884, Smith & Collins, as partners, became indebted to the plaintiffs in the sum of $936, and that sum was due and unpaid when this suit was brought. The partnership was dissolved on the 9th day of June, 1884. Smith, under the agreement of dissolution, took the stock of goods at Anderson, and Collins took that at Crawfordsville. Between January 30th, 1884, and the date of the dissolution of the partnership, Smith and Collins became largely indebted to the appellees and others. They were insolvent at the time the partnership was dissolved, and have so continued. On and prior to the 10th day of December, 1883, Jennie C. Smith was the wife of John B. Smith. On that day, John B. and Howard W. Smith were the joint owners of a tract of land and made parol partition of it. To carry into effect this partition deeds were executed and delivered. After John B. Smith had received his deed, he and his wife conveyed the land to Howard W. Smith, and he immediately conveyed the land to John B. Smith and his wife. The deed was recorded on the 8th day of January, 1884. This conveyance was a voluntary one, and, as the finding recites, " was made for the sole purpose of placing the entire title in John B. Smith and his wife as tenants by entireties, and beyond the reach of his present or future creditors." At the time this deed was executed, John B. Smith had no other individual property subject to execution, but he then owed no individual debts.

The indebtedness of the firm of Smith & Collins at that time was $3,000, and its assets $6,000. The indebtedness of the firm due at the time the conveyances were made was subsequently all paid by the firm, and, in the language of the finding, " the payments were made out of cash then in the hands of the firm, from collections made afterwards on bills then due from former sales of goods then on hands, and sales of goods subsequently purchased by the firm and for which it still owes the wholesale creditors." On and before the 29th day of May, 1882, Elizabeth Collins was the wife of the defendant Thomas B. Collins. Prior to that day, her husband made her a gift of $3,700, and on that day he borrowed from her the identical money which he had previously given her. To secure its payment, he executed his promissory note, which was signed by John B. Smith, a short time before the dissolution of the firm of Smith & Collins, but no consideration passed to Smith. At the time Smith signed the note he was insolvent, and has so remained. Smith & Collins also obtained a loan from the First National Bank of Crawfordsville, and after the dissolution of the partnership suffered judgment to be rendered against them. Their purpose in creating this debt and suffering judgment was to defraud their creditors.

On the 30th day of June, 1884, Elizabeth Collins instituted an action on the note executed to her by her husband and Smith, and recovered a judgment. On the judgment recovered by her executions were issued and were levied upon the goods at Anderson and at Crawfordsville. The goods at Anderson were levied upon and sold as the property of John B. Smith, and those at Crawfordsville were seized as the property of Thomas B. Collins. The purpose of John B. Smith in signing the note, and that of Smith & Collins in suffering judgment on the note and the seizure of the goods of the partnership upon the execution issued on the judgment, was to defraud their creditors, and of this purpose Elizabeth Collins had full notice.

On the 9th day of June, 1884, and thenceforward, Thomas B. Collins was insolvent. The executions were issued on the judgments of Elizabeth Collins and the bank after dissolution, and the property taken by the partners under the agreement of dissolution was seized and sold.

The conclusions of law stated by the court are:

"1st. That the plaintiffs are entitled to recover judgment against the defendants John B. Smith and Thomas B. Collins in the sum of $1,029.48.

"2d. That the conveyances from John B. Smith and wife to Howard W. Smith, and from Howard W. Smith to John B. Smith and Jennie C. Smith, of date January 4th, 1884, are valid and effectual as against the creditors of Smith & Collins.

"3d. That the plaintiffs are not entitled to take judgment, on their complaint and the facts found, against the defendant Elizabeth Collins."

The course of argument pursued by the appellants' counsel makes it necessary to consider the case only in so far as the rights of Mrs. Smith and Mrs. Collins are concerned, for it is not asserted that there was any error in the proceedings except such as it is alleged were committed in their favor. We, therefore, confine our discussion and decision to the questions arising on the issues joined between the appellants and Jennie C. Smith and Elizabeth Collins. The issues and the questions presented by Mrs. Smith are very different from those presented by Mrs. Collins, and we shall first dispose of the case in so far as it affects the rights of the former.

The rights of Mrs. Smith depend upon the deed executed to her and her husband by Howard W. Smith on the 4th day of January, 1884. If that deed is not invalid as against creditors, then the second conclusion of law stated by the trial court is right, and the judgment in her favor must be affirmed.

The deed to Mrs. Smith and her husband is valid, and constitutes them tenants by the entireties, unless it can be ad-

judged from the facts stated that it is vitiated by fraud. A husband who is not insolvent may, in good faith, unquestionably cause land to be conveyed to himself and his wife, and thus vest in himself and wife a joint tenancy with all its legal incidents. The creation of the tenancy is the act of the grantor, but the incidents are annexed by the law. It can not be held that a husband, who has property subject to execution more than sufficient to pay his debts, is guilty of fraud merely because he causes land owned by him to be conveyed to himself and his wife as tenants by the entireties. It is certainly true that a husband not in debt, or one in debt but having ample property subject to execution to pay all his debts, may, in good faith, make an absolute gift of land to his wife, and, if he may do this, surely he may cause the land to be so conveyed as to make the tenure such as to vest her with a joint right in possession coupled with the incident of survivorship. The conveyance, whatever its character or effect, provided it creates no secret trust, is valid unless there be legal or actual fraud. We assume, therefore, that the deed which vested in Mrs. Smith an estate in the land jointly with her husband is only impeachable at the suit of creditors upon the ground of fraud, and that if the creditors do not show it to be fraudulent it must be upheld.

The special finding does not show that there was any actual fraud on the part of Mrs. Smith or her husband. It is true that it is stated that the purpose was to place the property out of the reach of creditors, but it is not found that this was a fraudulent purpose. Fraud is not presumed. The presumption is in favor of honesty and good faith until the contrary appears. This rule would require us to decline to impute to the parties any corrupt motive. But there is another rule which applies here, and that is this : where a cause of action depends upon the establishment of fraud, the special finding must state that there was fraud. The rule was thus stated in *Elston* v. *Castor*, 101 Ind. 426 : "The court below found these facts, but failed to find the ultimate fact, that in

all this there was any collusion between the brothers, or that there was any fraud, or intent to defraud any one. If appellants were satisfied that the several facts mentioned were badges of fraud, and that fraud in fact should have been found, their proper course was by motion for a new trial. Fraud in such cases is a question of fact, and hence we can not determine it here as a matter of law from. the facts here found."

The rule stated in the quotation we have made is asserted in other cases, and is in harmony with the decisions upon kindred questions. *Stix* v. *Sadler,* 109 Ind. 254; *Bartholomew* v. *Pierson,* 112 Ind. 430.

By our statute the question of fraud is ·made one of fact, and where fraud is essential to the existence of a cause of action it must be found as a fact, and not left to be inferred as a matter of law. *Rose* v. *Colter,* 76 Ind. 590.

This court may, doubtless, give to facts their legal effect; but where, as here, the case is presented upon a special finding, it can not add a new and substantive fact to those stated by the trial court.

It is to be kept in mind that there is no finding that John B. Smith meant to place the partnership assets beyond the reach of creditors, nor that he intended to incur debts that he could not pay; nor, indeed, that he intended to incur any new debts at all. Nor is the value of the real estate stated in the special findings. For anything that appears it was of less value than six hundred dollars, and exempt from the claims of creditors. If exempt, creditors have no right to complain of its conveyance. *Blair* v. *Smith,* 114 Ind. 114; *Dumbould* v. *Rowley,* 113 Ind. 353; *Barnard* v. *Brown,* 112 Ind. 53; *Taylor* v. *Duesterberg,* 109 Ind. 165; *Faurote* v. *Carr,* 108 Ind. 123; *Burdge* v. *Bolin,* 106 Ind. 175.

As the value of the property is not stated, and as the presumption is in favor of good faith, we must assume that the husband did not convey an unreasonable amount of property to his wife.

The legal effect of a conveyance to a husband and wife is to place the land beyond the reach of the creditors of the husband during the life of the wife, and, in the event of her survivorship, vest her with title, and all that the facts show is that the partners intended that the conveyance of Howard W. Smith should have this effect.

It can not, it seems clear to us, be assumed that there was actual fraud in a case where no more appears than that a conveyance was intended to have precisely the force and effect given it by law. The assumption can not be made without violating the rule that the presumption is in favor of honest dealing, nor without also violating the rule that where a fact essential to a cause of action is not found, the presumption is, where the plaintiff has the burden, that it does not exist. *Stix* v. *Sadler, supra,* and cases cited; *Meeker* v. *Shanks,* 112 Ind. 207.

We can, of course, do no more than decide the case as it comes to us upon the special finding, and upon that finding we can not assert that there was any actual fraud. The exception to the conclusions of law concedes that the facts are correctly found, and if a party desires to challenge the correctness of the finding he must move for a new trial. *Warren* v. *Sohn,* 112 Ind. 213, and cases cited.

We can not, therefore, inquire what conclusions of fact might be drawn from evidentiary facts, but must take the ultimate facts as the special finding presents them, and apply the law to them. *Elston* v. *Castor, supra.* This necessarily restricts the power and duty of the court within much narrower limits than would hedge it in if the evidence were before the court and we were authorized to determine what inferences of fact should be drawn from the evidence.

Having ascertained that there is no actual fraud shown by the special finding, we come now to the question as to whether there is any constructive or legal fraud. Much that has been said applies to this phase of our inquiry. For years it has been the rule in this State, asserted by statute and

affirmed by the adjudged cases, that fraud, whether actual or constructive, is a question of fact. Nor does the statute merely declare that fraud is a question of fact, but it also declares that a conveyance shall not be deemed fraudulent merely because it was a voluntary one. Its language is clear and strong; thus it reads: "The question of fraudulent intent, in all cases arising under the provisions of this act, shall be deemed a question of fact; nor shall any conveyance or charge be adjudged fraudulent as against creditors or purchasers, solely on the ground that it was not founded on a valuable consideration." R. S. 1881, section 4924.

Many cases have been decided upon this statute, and they all agree that fraud, whether actual or constructive, is a question of fact, and that a voluntary conveyance can not be adjudged fraudulent at the suit of creditors where there is no actual fraud, if at the time the conveyance was made, or the suit was brought, the grantor had property subject to execution out of which the claims of his creditors could be paid. *Maple* v. *Burnside,* 22 Ind. 139; *Ewing* v. *Patterson,* 35 Ind. 326; *Parton* v. *Yates,* 41 Ind. 456; *Pence* v. *Croan,* 51 Ind. 336; *Sherman* v. *Hogland,* 54 Ind. 578, and cases cited; *Hardy* v. *Mitchell,* 67 Ind. 485; *Noble* v. *Hines,* 72 Ind. 12; *Leasure* v. *Coburn,* 57 Ind. 274; *Luce* v. *Shoff,* 70 Ind. 152; *Bruker* v. *Kelsey,* 72 Ind. 51; *Rose* v. *Colter,* 76 Ind. 590, and cases cited; *McLaughlin* v. *Ward,* 77 Ind. 383; *Wooters* v. *Osborn,* 77 Ind. 513; *Lockwood* v. *Harding,* 79 Ind. 129; *Morris* v. *Stern,* 80 Ind. 227; *Jarvis* v. *Banta,* 83 Ind. 528; *Powell* v. *Stickney,* 88 Ind. 310; *Sedgwick* v. *Tucker,* 90 Ind. 271; *Taylor* v. *Johnson,* 113 Ind. 164.

The principle which our cases assert and in various phases apply is substantially that asserted in *Rice* v. *Perry,* 61 Me. 145, where it was said: "A fraudulent purpose is an important element in the case, but it is not the only one; there must be superadded to it in addition to the sale, actual fraud, hindrance, or delay resulting therefrom to the creditors.

The sale will be upheld unless the fraudulent purpose is actually accomplished. Thus, if, notwithstanding the sale, Whitehouse & Goodwin retained * * sufficient to pay the debt of Wattson & Clark, and equally open, known, and accessible to them with that sold, the sale would not be void, whatever may have been the secret purpose of the parties to it. The reason for considering the sale void in this class of cases is that creditors are damaged thereby; and when the reason is wanting the rule itself becomes inapplicable."

There is, as our cases have always affirmed, no reason for stigmatizing a conveyance as fraudulent when the grantor has, at the time it is made, abundant property subject to execution out of which all his debts could be collected. Suppose, for illustration, a man to have ten thousand dollars' worth of property, and to be in debt no more than five hundred dollars, and that he should make a gift to his wife of five thousand dollars. Could it be said with justice that he was guilty of fraud? The case before us is not different in principle from the supposed case. At the time the conveyance was made the grantor owed no individual debts, the firm of which he was a member did owe three thousand dollars, but it had six thousand dollars of property subject to execution with which to pay its indebtedness. Moreover, the debt of the firm existing at the time the conveyance was made was subsequently paid in full, so that the creditors who now complain gave Smith & Collins credit long after the conveyance was made and recorded

Counsel for appellants make ingenious inferences from the facts found, and upon those inferences construct a very plausible argument. If we were dealing with the evidence there would be much force in their argument, but we have before us a special finding, which, as the authorities cited prove, we must assume contains all the facts, and we can not infer that others exist. If there were other facts, the appellants should, as we have already suggested, have pursued a different course. We limit our decision to the facts before us,

and assume, as we must, that no others favorable to the plaintiffs were proved.

Counsel say : " We are aware that it is a well settled rule of law of this State that a voluntary conveyance will not be set aside as fraudulent if at the time it was made the grantor retained sufficient property subject to execution to pay his debts ; but we insist that this rule does not apply to the case in hand. Here one of the grantees is the debtor. The conveyance was made while he was a debtor. It was made for the purpose of placing his property beyond the reach of his present as well as future creditors. His wife and co-grantee knew of this design. It is true the court does not say so in so many words, but the court does say that John B. Smith and his wife conveyed the land to Howard W. Smith, and that Howard W. Smith conveyed back to John B. Smith and wife for the sole purpose of placing the property out of the reach of creditors."

If all the assumptions of counsel were correct, then they might, perhaps, escape the force of the general rule which they concede our cases establish. But many of these assumptions are groundless. In the first place, while it is true that John B. Smith was indebted as a partner, it is also true that the partnership had property double in value the amount of the indebtedness. In the second place, it is not found, even indirectly, that Smith himself, at the time the conveyance was made, had any intention of defrauding creditors. It is not even found that he then had any thought of incurring any debt. It does, on the contrary, appear that he had property abundantly sufficient to pay his debts, and it could not be presumed, even if the facts stated in the finding were treated as evidentiary and not ultimate facts, that he intended to contract debts which he could not pay. In the third place, it is not found that Mrs. Smith knew that her husband was in debt, or intended to become indebted. Nor, indeed, is it found that the land conveyed was ever subject to the claims of the husband's creditors.

The utmost that can be inferred is that he, being then solvent, intended to place his property where it could not be reached during the lifetime of his wife, or, in case she survived him, where it could not be taken from her at all. But when this conveyance was made he had a right to have given it to his wife absolutely, and that he chose to do less does not invalidate the conveyance as against the wife. As to her the conveyance is valid, and that is the only question here. Under the law she might have been the grantee of the entire estate, and the fact that she does not get the estate absolutely does not invalidate the conveyance.

From whatever point of view the case is considered, the conclusion must be that, upon the facts stated in the special finding, regarded, as the law requires us to regard them, as the facts, and all the facts in the case, the conveyance is valid as to Jennie C. Smith.

The case, in so far as it affects the rights of Mrs. Collins, remains for consideration. That Mrs. Collins had a just claim against her husband is settled by the special finding. As against him she had a clear right to take judgment and issue execution. If she had this right, then, of course, she had a right to levy her execution upon the property of her debtor.

There is no finding that she was guilty of any fraud with respect to her husband's indebtedness, and we can see no reason why she was not entitled to the sum realized from the sale of the stock of goods at Crawfordsville which passed to her husband under the agreement of dissolution. The appellees, as partnership creditors, had no specific lien upon that property. *Louden* v. *Ball*, 93 Ind. 232; *Davis* v. *Delaware, etc., Canal Co.*, 109 N. Y. 47; *Hanover Nat'l Bank* v. *Klein*, 64 Miss. 141 (60 Am. R. 47); 2 Bates Partnership, section 847.

As Mrs. Collins had a just claim against her husband, and as she did no more than enforce that claim against his property in levying her execution upon the goods at Crawfords-

ville, she can not be compelled to refund to the appellees what she received from the sale.

A more difficult question arises respecting the sale of the property at Anderson which passed to Smith under the agreement of dissolution. In order to present the question, we copy literally from the special finding: "That the note was so signed by John B. Smith, and the judgment so consented to by him, for the fraudulent purpose of cheating, hindering and delaying the creditors of the firm of Smith & Collins, and for the purpose of enabling Elizabeth Collins to subject the stock of goods which had belonged to the firm of Smith & Collins, and which became his individual property upon the dissolution of said firm, to sale to pay and satisfy said debt, of which fraudulent purpose of the defendant Smith, the defendant Elizabeth Collins then and there had notice." This finding, in connection with others, shows that Mrs. Collins became a party to the fraud; that she yielded no consideration for the note upon which she obtained judgment; that from property sold pursuant to her fraud she has realized the sum of $1,740.47, which she withholds from the creditors of her fraudulent debtor. It is our judgment that she is chargeable in equity with this amount. Equity will compel her to account for the sum acquired by fraud and will not suffer her to enjoy the fruits of her wrong. *Jones* v. *Reeder,* 22 Ind. 111; *Blair* v. *Smith, supra,* and cases cited; *Smith* v. *Selz,* 114 Ind. 229; *Chamberlin* v. *Jones,* 114 Ind. 458; *Mason* v. *Pierron,* 69 Wis. 585; *Decker* v. *Decker,* 108 N. Y. 128.

In the case last cited the question was presented very like it is here, and it was held that one who is a party to a fraudulent transfer of property, for the purpose of defrauding creditors, is liable to the creditors to the extent of the property in his hands and to the value of that which has been sold by him.

Counsel cite us to *Dormueil* v. *Ward,* 108 Ill. 216, and other cases holding that only creditors who have obtained

judgments are entitled to invoke the aid of courts of equity against fraudulent conveyances, but it is enough to say that this is not the rule under the code of Indiana. *Field* v. *Holzman*, 93 Ind. 205, and authorities cited, p. 209.

What we have said disposes of the questions presented by the appellee's assignment of cross-errors, and we need not discuss the questions it presents.

The judgment as to Jennie C. Smith is affirmed, and as to so much of the judgment as holds that the appellee Elizabeth Collins is not bound to account for the money received from the sale of the goods which passed to John B. Smith under the agreement dissolving the partnership of Smith & Collins, the judgment is reversed, with instructions to restate the conclusion of law on this point, and enter judgment requiring the appellee Elizabeth Collins to account for the sum received from the sale of such property.

Filed June 27, 1888.

### On Petition for a Rehearing.

ELLIOTT, J.—The principal point decided affecting the rights of Mrs. Collins, who petitions for a rehearing, may be thus stated : A defendant who enters into a conspiracy to defraud the creditors of a co-conspirator, and who, pursuant to the purpose of the conspiracy, obtains a judgment, secures a sale under an execution thereon, thereby securing and retaining the avails of property that, of right, should have gone to the good-faith creditors of the co-conspirator, may be compelled to account for the proceeds of the sale so procured by fraud.

As our former opinion shows, we sustained our conclusion by ample authority, and we then thought, and still think, that it rests on solid principle. Neither in the original argument nor in that on this petition was there cited any relevant authority to the contrary.

We did not overrule the case of *Tasker* v. *Moss*, 82 Ind.

62, nor was it necessary to do so; we did, however, deny its relevancy. We deny its relevancy because, whatever may be thought of its soundness, it is easily discriminated from this case, for here the fraudulent vendee received and retains the proceeds of property which ought to have gone to the *bona fide* creditors, and not the person who, by fraud, was made to seem a creditor, but, in fact, was not.

The cases of *First Nat'l Bank* v. *Carter*, 89 Ind. 317, and *Beach* v. *Carter*, 93 Ind. 602, are not in point, for here the special finding shows that the defendant was an active participant in the fraud. It appears in the special finding not only that Mrs. Collins had actual knowledge of the fraud, and participated in it as a conspirator, but also that she paid no consideration whatever for the claim she asserted against Smith, and by means of which she consummated her fraudulent purpose.

We disposed of the decisions in other States which declare that only judgment creditors can assail a fraudulent conveyance, by reference to our statute and our decisions. To the cases referred to in the former opinion we might add others if it were necessary. It is, and long has been, the law of Indiana that a creditor, although he has not taken judgment, may successfully assail a fraudulent conveyance. *Field* v. *Holzman*, 93 Ind. 205; *Lindley* v. *Cross*, 31 Ind. 106; *Love* v. *Mikals*, 11 Ind. 227.

No question as to parties was made in the court below, and none can be made here. We are not concerned with the question as to how the funds derived from the judgment shall be distributed, since that question is not before us. It may be true that if there are other creditors, they will be entitled to share in the avails of the judgment when it is enforced, but that is nothing to the purpose. Here we are required to decide, and, properly, can only decide, whether, upon the pleadings as the record presents them and the special finding as it is written, the plaintiffs were entitled to judgment. If other creditors come in and present an issue involving the

distribution of the proceeds of the judgment, the question as to what the decree shall be will arise; but it is not now before us, as no pleadings of any description were filed presenting that question. If the complaint was thought defective for lack of parties, there was a plain method of attack; or, if facts not apparent on the face of the complaint required the presence of other parties, the question could easily have been presented by an answer.

The cases of *Adler* v. *Fenton*, 24 How. 407, and *Lamb* v. *Stone*, 11 Pick. 527, can not, it is very clear, be of force in a jurisdiction like ours, where the same tribunal possesses both law and chancery powers, and where the statute gives a creditor, who has no judgment, a right to relief against a fraudulent conspiracy and a fraudulent conveyance of property. *Adler* v. *Fenton, supra,* in truth sustains our position, for it is there said: "Unquestionably, the claims of morality and justice, as well as the legitimate interests of creditors, require there should be protection against those acts of an insolvent or dishonest debtor that are contrary to the prescriptions of law, and are unfaithful and injurious. But the Legislature must determine upon the remedies appropriate for this end." Our statutes and our decisions have given the honest creditor the protection which the Supreme Court of the United States says the claims of morality and justice require. It would be a bitter reproach to our courts if they should deny this protection, clothed as they are with the most comprehensive powers of law and equity. But the doctrine we here declare is by no means a novel one in this court. It was declared in *Jones* v. *Reeder*, 22 Ind. 111, and has been expressly approved. *Blair* v. *Smith, supra*; *Chamberlin* v. *Jones, supra*.

We think the true principle which underlies this class of cases is that stated by GIBSON, J., in *Penrod* v. *Mitchell*, 8 Serg. & R. 523: "Without doubt," said this great judge, "a conspiracy to enable a debtor to elude the process of the law, is immoral, and pernicious in its consequences to society; but

as it is punishable by indictment, there is no reason that the actors in it should receive castigation for what affects the public, in a civil action whose legitimate object is the redress of private injury.   If the value of the property assigned were not the standard, there would be no reason why damages beyond the amount of the judgment might not be given, which, I apprehend, could not be done, even if the value were of greater amount than the judgment."   We apply this principle here. ·  We adjudge that the wrong is pernicious, that it is punishable as a crime (R. S. 1881, section 2156),that from it the wrong-doer shall reap no benefit, and the creditor suffer no loss.   This is nothing more than a just application of the maxim that no man shall take advantage of his own wrong, since, to give the dishonest conspirator benefit would be to yield him the advantage at the expense of the creditor.   As held in *Chamberlin* v. *Jones, supra,* and many other cases, the wrong-doer who obtains property by fraud and thus excludes good-faith creditors, takes it as trustee and may be compelled to account, and if, as is well settled, the specific property can not be recovered, the plaintiff may have relief by way of compensation.   *Blair* v. *Smith, supra,* and authorities cited.

The decision in *Phipps* v. *Sedgwick,* 95 U. S. 3, if conceded to be otherwise relevant, is not in point, because the court placed its judgment upon the disability created by coverture, saying that "Such a proposition would be a very unjust one to the wife still under the dominion, control, and personal influence of the husband."   Manifestly this rule can not apply in jurisdictions where a married woman possesses nearly all the rights of a *feme sole,* and where "ability is the rule and disability the exception."   *Lane* v. *Schlemmer,* 114 Ind. 296; *Indiana, etc., R. W. Co.* v. *Allen,* 113 Ind. 581; *Bennett* v. *Mattingly,* 110 Ind. 197; *Chandler* v. *Spencer,* 109 Ind. 553; *Rosa* v. *Prather,* 103 Ind. 191.

But for another reason the case cited is not relevant; in that case there was constructive and not actual fraud.   Here-

there was actual fraud and a corrupt purpose. We have not held, nor intimated, that the vendee would be liable where there was only constructive fraud. Wc are concerned only with cases where the fraud is an actual one, executed by means of a corrupt conspiracy.

